Nos. 25-1413 / 25-1414

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

MARY DOE; JOHN DOE A; JOHN DOE B; JOHN DOE C; JOHN DOE D;
JOHN DOE E; JOHN DOE G; JOHN DOE H; MARY ROE,
*Plaintiffs - Appellants Cross-Appellees*

v.

GRETCHEN WHITMER, Governor of the State of Michigan; JAMES GRADY,
II, Colonel;

*Defendants - Appellees Cross-Appellants*

On Appeal from the United States District Court
for the Eastern District of Michigan,
Case No. 2:22-cv-10209 (Hon. Mark A. Goldsmith)

### PLAINTIFFS – APPELLANTS CROSS APPELLEES'
### CORRECTED THIRD BRIEF

Miriam Aukerman
Ewurama Appiagyei-Dankah
Marty Berger
ACLU Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930

Bonsitu Kitaba-Gaviglio
ACLU Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6823

Allison Frankel
ACLU Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

Paul D. Reingold
Cooperating Counsel
ACLU Fund of Michigan
Univ. of Michigan Law School
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................v

STATEMENT OF ISSUES .......................................................1

INTRODUCTION ..................................................................3

ARGUMENT SUMMARY ........................................................4

I.   SORA 2021 VIOLATES THE EX POST FACTO CLAUSE. ......................6

    A.   Core Ex Post Facto Principles .........................................6

    B.   SORA 2021 Retains the 2011 Amendments this Court
          Invalidated in *Does I*. ...........................................11

    C.   The District Court Correctly Ruled That Under the *Mendoza-
          Martinez* Analysis, SORA 2021 Is Punishment. .................14

        1.   Michigan's Registry Resembles the Historical
             Punishments of Shaming and Probation/Parole. ........................14

        2.   Michigan's Registry Imposes Affirmative Restraints. .............21

        3.   Michigan's Registry Serves Traditional Aims of
             Punishment. ...................................................24

        4.   Michigan's Automatic, Unreviewable, Perpetual
             Registration Requirements Are Not Rationally Related to
             Any Non-Punitive Purpose. .......................................24

        5.   Michigan's Automatic, Unreviewable, Perpetual
             Registration Requirements Are Excessive in Relation to
             Any Non-Punitive Purpose. .......................................26

    D.   Defendants' Other Arguments Lack Merit. .........................30

        1.   SORNA Cases Are Inapposite. ................................30

         2.   Defendants' Suggestion that Plaintiffs and Courts Have
             Blessed SORA 2021 Is False. ....................................36

E.      This Court Should Affirm the District Court's Remedy and Clarify the Constitutional Limits on Retroactive Registration. ..........36

II.     SORA 2021'S RETROACTIVE EXTENSION OF REGISTRATION TERMS TO LIFE VIOLATES THE EX POST FACTO CLAUSE.............38

A.      Retroactively Extending Registry Terms Contravenes the Core Purposes of the Ex Post Facto Clause. .................................39

B.      Lifetime Registration Makes the *Mendoza-Martinez* Factors Weigh Even More Heavily Toward Punishment. ...............................40

III.    SORA 2021'S CLASSIFICATION PROCESS FOR NON-MICHIGANDERS IS UNCONSTITUTIONAL. ........................................43

A.      How Registration for Non-Michiganders Works.................................44

B.      Defendants Subject Non-Michiganders to SORA Without Due Process. .....................................................................................46

1.      MSP's Decision Is Material to SORA's Scheme and Implicates a Protected Liberty Interest in Correct Classification.............................................................................47

2.      Michigan's Procedures for Out-of-Staters Violate Due Process. ..................................................................................49

3.      Defendants' Full-Faith-And-Credit Argument Is Meritless.....................................................................................51

C.      SORA 2021 Violates Equal Protection by Subjecting Non-Michiganders to Harsher Treatment....................................................52

IV.     SORA 2021 IMPERMISSIBLY DENIES SIMILARILY SITUATED REGISTRANTS THE OPPORTUNITY TO PETITION FOR REMOVAL..................................................................................................54

V.      AUTOMATIC, UNREVIEWABLE, PERPETUAL REGISTRATION IS IRRATIONAL. ..................................................................................56

VI.     SORA'S SCIENTER REQUIREMENT DOESN'T INSULATE IT FROM VAGUENESS CHALLENGES........................................................59

CONCLUSION ..................................................................................60

Certificate of Compliance ...........................................................62

Certificate of Service .................................................................63

**ADDENDA**

Designation of Relevant District Court Documents

Transcript of Oral Argument in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016) (excerpts)

## TABLE OF AUTHORITIES

**Cases**

*ACLU of N.M. v. City of Albuquerque*, 137 P.3d 1215 (N.M. Ct. App. 2006). ..................................................................................54

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965 (9th Cir. 2012). ...........................................................50

*Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021) ...................28

*Bacon v. Neer*, 631 F.3d 875 (8th Cir. 2011). ...........................................35

*Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000 (6th Cir. 2022). ...................52

*Carmell v. Texas*, 529 U.S. 513 (2000). .....................................................40

*Carpenter v. United States*, 585 U.S. 296 (2018). .....................................16

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). ..................50

*Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003). ............................47

*Creekmore v. Attorney Gen. of Tex.*, 341 F. Supp. 2d 648 (E.D. Tex. 2004). .................................................................. 47, 49

*Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999). ..............................48

*Detroit Free Press v. U.S. Dep't of Just.*, 829 F.3d 478 (6th Cir. 2016). ...............16

*Doe #35 v. Labrador*, 679 F. Supp. 3d 1019 (D. Idaho 2023) ........................ 11, 18

*Doe v. Dep't of Pub. Safety & Corr. Servs.*, 62 A.3d 123 (Md. App. Ct. 2013). ......................................................... 11, 18, 42

*Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014). ...........................................59

*Doe v. Lee*, 102 F.4th 330 (6th Cir. 2024). .................................... 7, 13, 14

*Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95 (3d Cir. 2008). ..............54

*Doe v. Pryor*, 61 F. Supp. 2d 1224 (M.D. Ala. 1999). .............................. 45, 47, 51

*Doe v. Rausch*, 461 F. Supp. 3d 747 (E.D. Tenn. 2020) .........................42

*Doe v. State*, 111 A.3d 1077 (N.H. 2015). ....................................... passim

*Doe v. State*, 189 P.3d 999 (Alaska 2008). ................................. 11, 18, 28

*Doe v. Wasden*, 558 F. Supp. 3d 892 (D. Idaho 2021). ...........................49

*Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016). ........................................ passim

*Does v. Snyder*, 449 F. Supp. 3d 719 (E.D. Mich. 2020). ................................ 13, 36

*Does v. Snyder*, 606 F. Supp. 3d 608 (E.D. Mich. 2021). ....................................36

*Does v. Wasden,* 982 F.3d 784 (9th Cir. 2020)........................................ 11, 30, 34

*Does v. Whitmer*, 69 F.4th 300 (6th Cir. 2023). ....................................................36

*Gonzalez v. State*, 980 N.E.2d 312 (Ind. 2013)........................................................42

*Graham v. Florida*, 560 U.S. 48 (2010). ................................................................41

*Hamby v. Neel*, 368 F.3d 549 (6th Cir. 2004)........................................................49

*Hart v. Hillsdale Cnty.*, 973 F.3d 627 (6th Cir. 2020)............................................48

*Hendricks v. Jones*, 349 P.3d 531 (Okla. 2013). ....................................................54

*In re Harder*, No. 368645, 2025 WL 825907 (Mich. Ct. App. Mar. 14, 2025) ................................................................................................... 35, 52

*In re T.B.*, 489 P.3d 752 (Colo. 2021). ....................................................................11

*Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254 (6th Cir. 2018). ............... 39, 52

*Johnson v. Robison*, 415 U.S. 361 (1974). ..............................................................55

*Kansas v. Hendricks*, 521 U.S. 346 (1997)..............................................................37

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963). ..............................................4

*Koch v. Vill. of Hartland*, 43 F.4th 747 (7th Cir. 2022). ........................................34

*Kvech v. N.M. Dep't of Pub. Safety*, 987 F. Supp. 2d 1162 (D.N.M. 2013). ................................................................................................... 47, 49

*Landgraf v. USI Film Prods*, 511 U.S. 244 (1994)................................................6, 40

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) ............................................51

*Mathews v. Eldridge*, 424 U.S. 319 (1976). ...................................................... 46, 50

*Meredith v. Stein*, 355 F. Supp. 3d 355 (E.D.N.C. 2018). ................................ 47, 49

*Miller v. Caudill*, 936 F.3d 442 (6th Cir. 2019)......................................................31

*Nova Recs., Inc. v. Sendak*, 706 F.2d 782 (7th Cir. 1983)......................................59

*Packingham v. North Carolina*, 582 U.S. 98 (2017)................................................16

*People v. Betts*, 968 N.W.2d 497 (Mich. 2021)................................................ passim

*People v. Collins*, No. 328853, 2016 WL 7427153 (Mich. Ct. App. Dec. 20, 2016). .........................................................................................60

*People v. Kiczenski*, No. 364957, 2024 WL 4595174 (Mich. Ct. App. Oct. 28, 2024). ....................................................................................35

*People v. Lockett*, 659 N.W.2d 681 (Mich. Ct. App. 2002). ...................................60

*People v. Lymon*, __ N.W.3d __, No. 164685, 2024 WL 3573528 (Mich. July 29, 2024) ..........................................................................15

*People v. Williams*, 246 Cal. Rptr. 464 (Cal. Ct. App. 1988)................................42

*Peoples Rts. Org. v. City of Columbus*, 152 F.3d 522 (6th Cir. 1998). ..................54

*Pierre v. Vasquez*, No. 20-cv-224-LY, 2022 WL 3219421 (W.D. Tex. Aug. 9, 2022). ..............................................................................47

*Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127 (3d Cir. 2000). ....................................................................................59

*Prynne v. Settle*, 848 F. App'x 93 (4th Cir. 2021). .........................................11, 34

*Quispe del Pino v. Md. Dep't of Pub. Safety & Corr. Servs.*, 112 A.3d 522 (Md. Ct. Spec. App. 2015)...........................................................42

*Riley v. California*, 573 U.S. 373 (2014). ...............................................................16

*Saenz v. Roe*, 526 U.S. 489 (1999) .......................................................................53

*Schepers v. Comm'r*, 691 F.3d 909 (7th Cir. 2012)...............................................18

*Schepers v. Commissioner*, 691 F.3d 909 (7th Cir. 2012)....................................48

*Smith v. Doe*, 538 U.S. 84 (2003) ................................................................. passim

*State v. Hinman*, 530 P.3d 1271 (Mont. 2023). ...............................11, 16, 18, 21

*State v. Mendivil*, 592 P.2d 1256 (Ariz. 1979) ......................................................42

*State v. Williams*, 952 N.E.2d 1108 (Ohio 2011)..................................................11

*United States v. Brown*, 381 U.S. 437 (1965)..........................................................6

*United States v. Carolene Prods.*, 304 U.S. 144 (1938)..........................................7

*United States v. Carter*, 463 F.3d 526 (6th Cir. 2006). .......................................27

*United States v. Elkins*, 683 F.3d 1039 (9th Cir. 2012).........................................34

*United States v. Felts*, 674 F.3d 599 (6th Cir. 2012). ....................................... 32, 34

*United States v. Guzman*, 591 F.3d 83 (2d Cir. 2010)........................................34

*United States v. Johnson*, 756 F.3d 532 (7th Cir. 2014).........................................27

*United States v. Juv. Male*, 590 F.3d 924 (9th Cir. 2010). ......................................30

*United States v. Kebodeaux*, 570 U.S. 387 (2013). .................................... 31, 32

*United States v. Lawrance*, 548 F.3d 1329 (10th Cir. 2008). ..................................34

*United States v. Leach*, 639 F.3d 769 (7th Cir. 2011). .............................................34

*United States v. Parks*, 698 F.3d 1 (1st Cir. 2012). .................................................35

*United States v. Scott*, 270 F.3d 632 (8th Cir. 2001) ...............................................28

*United States v. Shenandoah*, 595 F.3d 151 (3d Cir. 2010). ....................................34

*United States v. W.B.H.*, 664 F.3d 848 (11th Cir. 2011). .......................................35

*United States v. Wass*, 954 F.3d 184 (4th Cir. 2020)....................................... 34, 35

*United States v. Young*, 585 F.3d 199 (5th Cir. 2009)...............................................35

*Wallace v. State*, 905 N.E.2d 371 (Ind. 2009). .......................................... 11, 18, 28

*Weaver v. Graham*, 450 U.S. 24 (1981). ....................................... 6, 39, 43

*Willman v. Attorney General of United States*, 972 F.3d 819 (6th Cir. 2020) ...........................................................................................................30

**Statutes**

18 U.S.C. § 2250 ...................................................................................................31

18 U.S.C. § 3583 ...................................................................................................28

22 U.S.C. § 212b ...................................................................................................21

34 U.S.C. § 20915 .................................................................................................33

34 U.S.C. § 20920 .................................................................................................33

34 U.S.C. § 20922 .................................................................................................32

34 U.S.C. § 20927 ......................................................................................... 31, 32

M.C.L. § 257.307 ..................................................................................................21

M.C.L. § 28.721 ....................................................................................................31

M.C.L. § 28.722 ..............................................................................44

M.C.L. § 28.723. ............................................................ 44, 52, 53

M.C.L. § 28.724. ................................................................... 19, 50

M.C.L. § 28.724a. ...........................................................................33

M.C.L. § 28.725a. ...................................................................... 33, 48

M.C.L. § 28.728c ..................................................................... 33, 55, 56

M.C.L. § 28.729. ...................................................................... 19, 29, 33

M.C.L. § 712A.13a .........................................................................21

M.C.L. § 712A.18 ...........................................................................21

M.C.L. § 712A.19a. ........................................................................21

**Regulations**

28 C.F.R. § 72.8. ............................................................................31

**Other Authorities**

3 Ronald D. Rotunda & John E. Nowak, *Treatise on Const. L.* (Sept. 2025 update).................................................................................49

86 Fed. Reg. 69856 (Dec. 8, 2021). ...........................................31

Department of Justice, *SORNA Implementation Status.* ...........................................32

National Crim. Justice Reference Serv., *Sex Offender Risk Assessment* (2022) ..........................................................................58

*The Federalist No. 44* (James Madison). ...................................7

U.S. Sent'g Comm'n, *Report to the Congress: Career Offender Sentencing Enhancements* (2016).......................................45

**STATEMENT OF ISSUES
RAISED IN DEFENDANTS' CROSS-APPEAL**

1. **Count I:** Where, as in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), Michigan's Sex Offender Registration Act ("SORA") imposes sweeping and often lifelong restrictions on nearly every aspect of Plaintiffs' lives, does SORA's retroactive application to pre-2011 registrants violate the Ex Post Facto Clause?

> Plaintiffs say yes.
>
> Defendants say no.
>
> District court said yes.

2. **Count II:** Does SORA's retroactive extension of registration terms to life for 17,000 people, without any justification or individual review, violate the Ex Post Facto Clause?

> Plaintiffs say yes.
>
> Defendants didn't address.
>
> District court said yes.

3. **Count XI:** Does SORA violate the Due Process and Equal Protection Clauses by registering non-Michiganders without any procedural protections, and by subjecting them to harsher terms than Michiganders?

1

Plaintiffs say yes.

Defendants say no on due process; didn't address equal protection.

District court said yes.

## INTRODUCTION

Defendants ask this Court to rule based on fear, not facts. Defendants' appeal to emotion should not distract the Court from what is actually at issue. There is no dispute that sex crimes cause grave harm and that states can try to prevent such harm. The question is whether the Constitution permits Michigan to subject people—in many cases retroactively—to sweeping, pointless, and counterproductive restrictions on every facet of their lives, for decades after they cease to present any more risk than non-registrants, without *any* individual assessment or possibility of removal *ever*.

The Constitution applies even to those most "feared and disdained." *Does #1-5 v. Snyder*, 834 F.3d 696, 705 (6th Cir. 2016) ("*Does I*"). To be sure, states can make "**reasonable** categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Smith v. Doe*, 538 U.S. 84, 103 (2003) (emphasis added). But states don't have "a blank check." *Does I*, 834 F.3d at 705. Michigan can't make **unreasonable** categorical judgments, retroactively impose punishment, or deny out-of-state registrants due process and treat them more harshly than Michiganders. The district court correctly concluded that Michigan's law does just that.

3

## ARGUMENT SUMMARY

***Count I (Ex Post Facto)*:** Plaintiffs don't contend that *all* registries are punitive. This one is. SORA 2021 retains the same core features that led this Court in *Does I* to invalidate SORA 2011: it automatically requires perpetual supervision with *no* path off the registry; stigmatizes people as dangerous predators on the public registry; and imposes a byzantine maze of restrictions under threat of imprisonment. Yet the record establishes that SORA *undermines* Michigan's public safety goal. SORA is also grossly excessive because recidivism risk drops dramatically over time, meaning that mandating registration for decades or until death serves no purpose. The district court correctly held that SORA 2021 remains punishment under the governing analysis from *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963).

Defendants offer no admissible evidence to rebut these facts. Instead, they try to evoke fear and disgust. But that only exemplifies why the Framers crafted the Ex Post Facto Clause as a constitutional guardrail against vindictive, retroactive legislation. Defendants also try to steer the Court away from analyzing *this law* on *this record* under the applicable legal test. Instead, they rely on a case that rejected a kitchen-sink challenge to a *different* law, the federal Sex Offenders Registration and Notification Act ("SORNA"). But SORNA and SORA are structurally completely different. Meanwhile, SORA 2021 contains *virtually all* the

4

same 2011 amendments this Court already found punitive in *Does I*. Defendants can't avoid a *Mendoza-Martinez* analysis. And they can't avoid the record, which establishes that all the *Mendoza-Martinez* factors point to punishment.

**Count II (Retroactive Extension)**: Defendants don't even attempt to challenge the district court's ruling that retroactive lifetime registration violates the Ex Post Facto Clause. Nor could they. Retroactively lengthening to *life* the registry terms of 17,000 people contravenes the core purposes of the Clause—upending settled expectations, including the basis of plea decisions. Given that recidivism risk declines dramatically over time, requiring people to continue navigating SORA's burdensome requirements *until death*—even if they have successfully lived in the community for decades, grown old, or become hospitalized or housebound—is even more punitive.

**Count XI (Non-Michiganders)**: The district court correctly enjoined SORA's application to out-of-staters on two separate grounds: (1) Michigan's registration procedures violate due process, and (2) imposing harsher requirements violates equal protection. Michigan requires out-of-staters to register if their offense is "substantially similar" to a registrable Michigan offense or they are required to register in their home state—and requires registration for *the longer* of those terms. Michigan's procedures violate due process because the Michigan State Police ("MSP") unilaterally determines whether non-Michiganders are

subject to SORA and for how long—determinations that don't turn on the conviction alone, but rather require complicated cross-jurisdictional comparisons. Yet MSP fails to provide *any* notice or opportunity to be heard, or even to disclose the basis for its decisions. Defendants have forfeited any challenge to the equal protection claim by failing to brief it. On the merits, Michigan has no permissible basis for subjecting out-of-staters to harsher registration terms than Michiganders.

Accordingly, this Court should affirm Counts I, II, and XI. And because Defendants fail to rebut Plaintiffs' arguments on Counts III, IV, and VIII, the Court should provide the relief requested in Plaintiffs' opening brief on those claims.

## ARGUMENT

### I.    SORA 2021 VIOLATES THE EX POST FACTO CLAUSE.

#### A.    Core Ex Post Facto Principles

Three key principles should guide the analysis here. First, the Court must consider "the evils [the Ex Post Facto Clause] was designed to eliminate." *United States v. Brown*, 381 U.S. 437, 442 (1965). As *Does I* recognized, the Framers intended the Clause to prevent states from "punish[ing] socially disfavored persons without prior notice." 834 F.3d at 699; *see Weaver v. Graham*, 450 U.S. 24, 28-29 (1981); *Landgraf v. USI Film Prods*, 511 U.S. 244, 266 (1994). It provides a "constitutional bulwark" against impassioned legislative overreach.

*The Federalist No. 44* (James Madison) (Library of Congress). "[T]he fact that people convicted of sex offenses are so widely feared and disdained ... implicates the [Clause's] core counter-majoritarian principle." *Does I*, 834 F.3d at 705-06.

Second, as in *Does I*, the Court must evaluate the *entire* statutory scheme's *cumulative effects*, rather than parse whether each provision independently constitutes punishment. *Id.* at 705. That accords with the approach in *Smith v. Doe*: the Supreme Court didn't ask whether individual provisions of Alaska's registry were punitive, but rather considered the "statute's text and its structure" *as a whole* and "how the effects of the Act are felt by those subject to it." 538 U.S. at 92, 99-100; *see Doe v. Lee*, 102 F.4th 330, 338 (6th Cir. 2024) (examining "entirety of the regulatory scheme"). This approach makes sense because registrants don't experience just individual provisions; they feel the cumulative effects of the *whole* statute all at once, all the time.

Third, as in *Does I*, ex post facto analysis must be based on "the record in this case," 834 F.3d at 705, including the sea-change in technological developments, empirical research, and real-world conditions since the early registry cases were decided. *Id.* at 704-705 (weighing empirical research). Courts cannot reflexively apply prior decisions where the assumptions and facts underlying them "have ceased to exist." *United States v. Carolene Prods.*, 304 U.S. 144, 153 (1938); *see* Pls.' Br., Doc. 67, at 48-50. Thus, even though *Smith* and *Does I*

7

applied the same legal *test*, the *record* in *Does I* compelled this Court to conclude that SORA was "something altogether different from and more troubling than" the "first-generation registry law" that *Smith* permitted. 834 F.3d at 701-06.

Here too, the key premises of *Smith*—that registrants are forever dangerous, and registration had only "minor and indirect" consequences—are disproven by the record. 538 U.S. at 104.

| *Smith* | **Facts Established by the Record Here** |
|---------|------------------------------------------|
| Registrants' recidivism rates are "frightening and high." 538 U.S. at 103. | Most registrants **never recidivate**. Recidivism rates for sex offenses are much lower than for virtually any other type of crime.[1] |
| Registrants are likely to reoffend long after conviction. *Id.* at 103-04. | Recidivism **risk drops dramatically over time**; after ten years, most registrants present no more risk than non-registrants; after 20 years, that is true even for those who were initially highest risk. Between 17,000-19,000 Michigan registrants have already reached the point where they are no more likely to commit a sex offense than non-registrants.[2] |
| Registrants, as a class, are dangerous. *Id.* | Likelihood of reoffending **varies widely** based on well-known risk factors.[3] |

---

[1] Pls.' Statement of Material Facts ("SOMF"), R. 123-1, PageID #3760-3765.

[2] Stay Op., R. 192, PageID #9502; SOMF, R. 123-1, PageID #3748-3759.

[3] SOMF, R. 123-1, PageID #3748-3758.

| *Smith* | **Facts Established by the Record Here** |
|---|---|
| Conviction-based registration requirements are reasonably related to the danger of recidivism. *Id.* at 104. | Conviction-based registration requirements don't correspond to risk. SORA's **tier levels are backwards**, with higher-tier registrants *less* likely to recidivate.[4] |
| Statute has only "minor" consequences. *Id.* | SORA has such **life-altering consequences** that registration is often more important in plea bargaining than prison term length.[5] |
| Registrants are not required to report in person and are not subject to supervision. *Id.* at 101. | SORA is **similar to, or harsher than, probation/parole**, requiring extensive in-person reporting, often within three days, mostly for life, and subjecting registrants to police sweeps at home/work.[6] |
| There is no evidence that registration causes substantial work or housing disadvantages. *Id.* at 100-101. | SORA has a **devastating impact on employment and housing**: 45% of registrants report no employment, and 12% report having been homeless; myriad laws/policies bar registrants from housing/employment opportunities.[7] |

---

[4] *Id.*, PageID #3768-3770.

[5] *Id.*, PageID #3837-3839, 3774-3832; Op., R. 158, PageID #8698; Chartier Rept., R. 123-21, PageID #4705-4712.

[6] Op., R. 158, PageID #8690-8691; SOMF, R. 123-1, PageID #3785-3799; Probation/Parole Comparison Chart, R. 131-10.

[7] SOMF, R. 123-1, PageID #3807-3816.

| *Smith* | **Facts Established by the Record Here** |
|---|---|
| The harms registrants experience flow from the fact of conviction. *Id.* at 101. | Registrants' **harms result from registration** and vastly exceed the consequences of a conviction alone.[8] |
| The registry simply disseminates accurate criminal record information. *Id.* at 98. | The registry's design, language, and functionality **stigmatize registrants** as current dangers to society.[9] |
| The registry is "passive"; because the public must look up entries, it functions like a criminal records archive. *Id.* at 99, 104. | The **internet revolution fundamentally changed the consequences** of registration; information about registrants is pushed out to online users who aren't even looking for it; the public can track and map registrants and submit tips to trigger criminal investigations.[10] |

Courts across the country—including in Alaska, Colorado, Indiana, Maine, Maryland, Montana, New Hampshire, Ohio, and Oklahoma—have recognized that registration laws can become unconstitutionally punitive when they impose extensive reporting requirements, lengthy registration terms, and online stig-

---

[8] *Id.*, PageID #3785-3832.

[9] Op., R. 158, PageID #8689; SOMF, R. 123-1, PageID #3774-3785.

[10] SOMF, R. 123-1, PageID #3774-3785.

matization, with no individual review or opportunity for removal. *See Doe v. State*, 189 P.3d 999, 1012 (Alaska 2008); *Wallace v. State*, 905 N.E.2d 371, 380-81 (Ind. 2009); *State v. Letalien*, 985 A.2d 4, 18-26 (Me. 2009); *Doe v. Dep't of Pub. Safety & Corr. Servs.*, 62 A.3d 123, 138-40 (Md. App. Ct. 2013); *State v. Hinman*, 530 P.3d 1271, 1276-78 (Mont. 2023); *Doe v. State*, 111 A.3d 1077, 1100 (N.H. 2015); *State v. Williams*, 952 N.E.2d 1108, 1113 (Ohio 2011); *Starkey v. Okla. Dep't of Corrs.*, 305 P.3d 1004, 1022-26 (Okla. 2013); *cf. In re T.B.*, 489 P.3d 752, 768 (Colo. 2021) (juvenile registration). In addition, at least two circuits have reversed dismissals of ex post facto challenges, recognizing that the facts matter. *See Does v. Wasden,* 982 F.3d 784, 790-93 & n.1 (9th Cir. 2020)[11]; *Prynne v. Settle*, 848 F. App'x 93, 101-02 (4th Cir. 2021).

### B.    SORA 2021 Retains the 2011 Amendments this Court Invalidated in *Does I*.

This Court held in *Does I* that Michigan's 2006 amendments (which imposed exclusion zones) and 2011 amendments (which retroactively converted most registrants' terms to life; restructured the registry into tiers; and exponentially increased the information that must be reported, often immediately and in person) constituted punishment and that their retroactive application "must there-

---

[11] *See Doe #35 v. Labrador*, 679 F. Supp. 3d 1019, 1048 (D. Idaho 2023) (*Wasden* on remand).

fore cease." 834 F.3d at 706. The Michigan Supreme Court likewise held that SORA 2011 violated the state and federal Ex Post Facto Clauses. *People v. Betts*, 968 N.W.2d 497 (Mich. 2021).

In SORA 2021, the legislature excised the 2006 amendments but not the 2011 amendments. As Defendants admit, nearly all the 2011 amendments "remain in the SORA today." Defs.' Stay Mot., Doc. 21-1, at 7; Pls.' Statement of Material Facts ("SOMF"), R. 123-1, PageID #3734-3739; SORA Highlighted Changes, R. 123-4. SORA 2021 still retroactively categorizes people into tiers with "no provision for individualized assessments of proclivities or dangerousness;" requires "time-consuming and cumbersome" reporting, compelling registrants to interrupt their lives "with great frequency in order to appear in person before law enforcement to report even minor changes to their information," in most cases for life; imposes "significant restraints on how registrants may live their lives;" and "marks registrants as ones who cannot be fully admitted into the community." *Does I*, 834 F.3d at 703-05. **None of this has changed.**

Defendants attempt to cabin *Does I* to exclusion zones and a couple in-person reporting requirements. The *Does II* district court rejected that very argument, correctly holding that *Does I* made "no distinction between particular provisions," but "quite clearly—invalidat[ed] all portions of the 2006 and 2011 amendments." *Does v. Snyder*, 449 F. Supp. 3d 719, 729 (E.D. Mich. 2020)

12

("*Does II*"); *see Betts*, 968 N.W.2d at 516-21 (SORA 2011, *in its entirety*, couldn't be retroactively applied).

Further, Defendants' cramped reading of *Does I* ignores that this Court declined to reach plaintiffs' challenges to various other 2011 amendments—including retroactive lifetime registration, free speech limitations, and vague reporting requirements—because, under the ex post facto ruling, "none of the contested provisions may now be applied to the plaintiffs." *Does I*, 834 F.3d at 706; *see Does I* Oral Argument Transcript (Addendum at 80-81). If the Court had only meant to excise a few in-person reporting requirements, those other claims *would not have been moot*.

*Lee*, 102 F.4th 330, doesn't support Defendants.[12] *Lee* held that simple registration and reporting requirements can be constitutional, but requirements "which mirror Michigan's … 2011 amendments … must fail." *Id.* at 339. SORA 2021's provisions don't just mirror those amendments; they *are* those amendments. *Lee*'s passing description of the 2011 amendments as concerning in-person reporting doesn't change the fact that the amendments did much more. *Does I*, 834 F.3d at 698; SORA Highlighted Changes, R. 123-4. Indeed, *Lee* acknowledged other punitive aspects of the 2011 amendments, emphasizing that

---

[12] *See* Pls.' Suppl. Br. on *Lee*, R. 146.

"categoriz[ing] registrants based on … their conviction and without an individu-

alized assessment … may be questionable under [*Does I*]." 102 F.4th at 342.

### C.    The District Court Correctly Ruled That Under the *Mendoza-Martinez* Analysis, SORA 2021 Is Punishment.

The district court recognized that, as in *Does I*, the principal question is

whether the non-exhaustive *Mendoza-Martinez* factors show, by the clearest

proof, that SORA's effects are punitive. *See Does I*, 834 F.3d at 705 (standard is

"difficult" but "not … impossible").[13] The court correctly concluded that SORA

2021—which retains SORA 2011's unreviewable conviction-based tiers, stigma-

tizing online registry, and lengthy-lifetime reporting obligations—is punitive.

#### 1.  Michigan's Registry Resembles the Historical Punishments of Shaming and Probation/Parole.

Shaming: *Does I* held that SORA 2011 resembles shaming punishments,

"brand[ing] registrants as moral lepers[.]" 834 F.3d at 705. The Michigan

Supreme Court agreed, focusing on the "breadth of information available to the

public—far beyond a registrant's criminal history—as well as the option for

subscription-based notification of the movement of registrants." *Betts*, 968

N.W.2d at 551. SORA 2021's *only* change to the online registry—removal of tier

_____

[13] The court held that SORA had a non-punitive purpose. Op., R. 158, PageID #8685-8687. Plaintiffs preserve the question of whether SORA 2021 has a puni-tive purpose, but recognize this Court found SORA 2011's intent was non-punitive "though some features might suggest a punitive aim." *Does I*, 834 F.3d at 700.

designations—doesn't alter the analysis: SORA still "holds [registrants] out for others to shame or shun." *People v. Lymon*, __ N.W.3d __, No. 164685, 2024 WL 3573528, at *8-9 (Mich. July 29, 2024). The district court thus correctly held that SORA 2021 similarly creates a worldwide wall of shame, "signal[ing] a highly dangerous type of criminal who requires constant public monitoring and scrutiny." Op., R. 158, PageID #8689.

Defendants try to avoid the obvious—that there is scarcely anything more stigmatizing than being labeled a "registered sex offender"—by citing *Smith* for the proposition that registration simply provides accurate criminal-record information. Defs.' Br., Doc. 70, at 34 (citing 538 U.S. at 99). But SORA today is not "analogous to a visit to an official archive of criminal records." *Smith*, 538 U.S. at 99. Far from simply listing convictions and basic information, Michigan's registry encourages the public to map, track, and submit tips about registrants. Pls.' Br., Doc. 67, at 22-24. SORA's "electronic notification system is particularly troublesome … 'increas[ing] the likelihood of social ostracism.'" Op. R. 158, PageID #8689-8690 (citing *Betts*, 968 N.W.2d at 509). And the website portrays registrants as "highly dangerous[.]" *Id.*, PageID #8689. "[R]e-packaging information and providing it to the public in a different form can in and of itself increase shaming." *Id.*

Moreover, since *Smith*, "[t]echnology has dramatically changed the form,

15

function, and reach of registry information." Lageson Rept., R. 123-14, PageID #4484-4494. Constitutional analysis must account for such evolution. *See Riley v. California*, 573 U.S. 373, 393 (2014) ("cell phones … implicate privacy concerns far beyond those implicated by the search of … a wallet, or a purse"); *Carpenter v. United States*, 585 U.S. 296, 311-12 (2018); Pls.' Br., Doc. 67, at 48-50. When *Smith* was decided, only 15% of Americans had home internet. Lageson Rept., R. 123-14, PageID #4494. Now, the internet is "the modern public square." *Packingham v. North Carolina*, 582 U.S. 98, 107 (2017); *see Smith*, 538 U.S. at 99 ("[H]umiliation increas[es] in proportion to the extent of the publicity.").

Today, digital labeling—and the ease with which stigmatizing registry data is reposted—"cut[s]" registrants "out of social, institutional, and technological life," causing damage "far beyond the type and extent of harm the Supreme Court considered in 2003." Lageson Rept., R. 123-14, PageID #4484-4485; *Detroit Free Press v. U.S. Dep't of Just.*, 829 F.3d 478, 485 (6th Cir. 2016) (en banc) ("In 1996, this court could not have known or expected that [an online] booking photo could haunt the depicted individual for decades."). As courts recognize, "there is a fundamental difference" between today's technological environment and that which existed when *Smith* was decided. *Hinman*, 530 P.3d at 1277; *see Doe*, 111 A.3d at 1097. As one registrant testified, registration is "often the first thing people find out about me" on the internet. A.J. Decl., R. 124-6, PageID #4851.

Being "branded [as] a potentially violent menace by the state," *Betts*, 968 N.W.2d at 514, causes harm *far beyond* the consequences of having a conviction. R.H.2's felonies were no barrier to employment, but once an employer learned his registry status, they said "we were 'done here.'" R.H.2 Decl., R. 124-5, PageID #4845. A prospective employer told T.P. "point blank that if [he] had just had a conviction and was not on the public sex offender registry, they would have had no issue with hiring [him]." T.P. Decl., R. 124-15, PageID #4899. A.J. was fired "specifically because [he] had shown up on the registry." A.J. Decl., R. 124-6, PageID #4853. K.M. couldn't enlist in the army because he's on the registry; he's been evicted multiple times after someone told his landlord he was on the registry. K.M. Decl., R. 124-12, PageID #4886. J.M. was evicted after the police came to his home for a registry sweep. J.M. Decl., R. 124-11, PageID #4880-4881; *see* SOMF, R. 123-1, PageID #3785-3832 (additional examples).

Public registration is so stigmatizing that it leads to harassment and vigilantism. A neighbor stood in front of Doe F's home on Halloween swinging a baseball bat, telling people Doe F was a "sex offender." T.R.'s neighbors trash his yard and scream that he's a pedophile. Doe C's home and vehicle have been egged. J.M.'s landlord held him at gunpoint after learning he was on the registry. Many registrants report death threats. A person found Doe G on the registry and told him all sex offenders should be killed. R.H.2 was sent videos of cats being tortured

17

and told his own would be killed. SOMF, R. 123-1, PageID #3804-3806.

Defendants say the registry doesn't allow public comments, but the public finds plenty of ways to comment: a neighbor broadcasted Doe D's registry profile to his homeowner's association; a registry map showing D.K.'s home address was posted to an online group; K.M.'s registry profile was shared across social media. *Id.*, PageID #3805-3806. Defendants ignore that, as this Court recognized in *Does I*, branding Plaintiffs as dangerous sex offenders "consigns them to years, if not a lifetime, of existence on the margins." 834 F.3d at 705.

Probation/Parole: Like *Does I*, 834 F.3d at 702-03; *Betts*, 968 N.W.2d at 510; and *Lymon*, 2024 WL 3573528, at *7-9, the district court correctly held that SORA 2021 resembles parole/probation, archetypal forms of punishment. Op., R. 158, PageID #8691. Many other courts have similarly found registration "closely analogous to the deprivations imposed on parolees[/probationers]." *Schepers v. Comm'r*, 691 F.3d 909, 914 (7th Cir. 2012); *Labrador*, 679 F. Supp. 3d at 1042; *Hinman*, 530 P.3d at 444; *Doe*, 189 P.3d at 1012; *Wallace*, 905 N.E.2d at 380-81; *Doe*, 62 A.3d at 139.

SORA 2021 "contain[s] the same onerous reporting requirements" as SORA 2011, with only minor tweaks.[14] Op., R. 158, PageID #8683; SORA High-

---

[14] Although SORA 2021 *allows* MSP to establish alternatives to in-person reporting, because this is optional the court found it not meaningfully different

lighted Changes, R. 123-4; Obligations Summary, R. 123-3, PageID #3919-3922. Registrants also must have biometrics and photos taken, and pay fees. *Id.*, PageID #3916, 3922.

SORA "continues to impose substantial law-enforcement oversight and interaction on registrants." *Lymon*, 2024 WL 3573528, at *7. Registration is intertwined with the criminal case: judges cannot sentence people on registrable offenses until their registration is recorded on the judgment—criminal justice agents then process the registration. M.C.L. §28.724; SOMF, R. 123-1, PageID #3837. MSP's internal registry database is designed to monitor compliance and flag violations for enforcement action; compliance sweeps send law enforcement to people's homes and workplaces. *Id.*, PageID #3791-3796. SORA, like probation/parole, carries "the threat of imprisonment for failure to comply." Op., R. 158, PageID #8691. Sentences—up to ten years—exceed those for many probation/parole violations. Probation/Parole Comparison Chart, R. 131-10. Any SORA violation also triggers *mandatory* probation/parole revocation. M.C.L. §28.729(5)-(7).

Law enforcement and registrants alike understand these similarities. MSP's

---

from SORA 2011. Op., R. 158, PageID #8683 n.19. Currently MSP requires all changes except vehicles, phones, and domestic travel to be reported in person. SOMF, R. 123-1, PageID #3785-3788.

registry coordinator described SORA and probation/parole as being "two sets of parents" with comparable but slightly different rules. Hoffman Dep., R. 126-3, PageID #5837. The former Legal Affairs Administrator of the Michigan Department of Corrections' ("MDOC") testified that SORA is *harsher* because it "requires more information to be reported in shorter time periods," imposes non-individualized restrictions with no possibility of reduction/modification, and lasts decades longer (probation/parole typically lasts two years). Stapleton Rept., R. 123-20, PageID #4688, 4694-4695; *see* SOMF, R. 123-1, PageID #3796-3799 (registrant testimony that SORA is similar to or worse than probation/parole).

Defendants don't distinguish *Does I*, *Betts*, or *Lymon*. Instead, they present a chart ostensibly showing that all probationers/parolees have extensive permission-based restrictions, while SORA is notification-based. But the district court rejected Defendants' depiction of how probation/parole works, Op., R. 158, PageID #8691, and Defendants cannot prove that the court's finding was clearly erroneous. Defendants' chart, which describes stringent conditions imposed on a few parolees, ignores the fact that many parolees/probationers are *not* subject to permission-based restrictions, and have far fewer obligations than registrants. *See* Sample Probation Order, R. 128-18 (allowing phone/Zoom reporting after one month); Probation/Parole Comparison Chart, R. 131-10. Such probation/parole orders are no less "punishment" for purposes of the ex post facto comparison than

20

the orders Defendants cherry-pick for their chart.

### 2. Michigan's Registry Imposes Affirmative Restraints.

The "byzantine code" that this Court invalidated in *Does I* remains virtually unchanged today and continues to exceed the restrictions in *Smith* "by an order of magnitude." *Does I*, 834 F.3d at 697, 703; *see Betts*, 968 N.W.2d at 511-12. This Court held that requiring registrants to "appear in person, both initially and for updates"—in many cases "for life"—is a "direct restraint[] on personal conduct." *Does I*, 834 F.3d at 703; *see Smith*, 538 U.S. 101 (emphasizing no in-person reporting); *Starkey*, 305 P.3d at 1022-23; *Letalien*, 985 A.2d at 18; *Hinman*, 530 P.3d at 1276; *Doe*, 111 A.3d at 1096. Being subject to SORA also triggers myriad other legal restrictions, Prescott Rept., R. 123-10, PageID #4299-4307, such as limited parental rights, M.C.L. §§712A.13a(6), 18f(3)(g), 19a(2)(d); denial of access to subsidized housing, Schaafsma Rept., R. 123-22; mandatory in-person renewal of driver's licenses, M.C.L. §257.307(9); and mandatory sex-offender ID on passports, 22 U.S.C. §212b.

Any slip-up carries "the threat of … imprisonment," *Does I*, 834 F.3d at 703—"the 'paradigmatic' affirmative restraint," *Betts*, 968 N.W.2d at 510 (quoting *Smith*, 538 U.S. at 86). The threat of "being lugged off in cold irons bound … [is] always in the background." *Does I*, 834 F.3d at 703. Indeed, the "fear is constant." R.H. Decl., R. 124-4, PageID #4841. It is also justified. Take

E.S., who was unable to timely report because the police station was closed; he was arrested upon reporting the next day. E.S. Decl., R. 124-22, PageID #4943; Doe B Dep., R. 125-5, PageID #5119-5120 (similar).

As a result, registrants curtail basic human activities *to avoid doing things that would require reporting* and thus risk imprisonment. R.H.2 didn't attend his parents' funerals because he feared violating travel reporting requirements. R.H.2 Decl., R. 124-5, PageID #4847. Seventy-six-year-old J.S. stopped volunteering at church because of "the stress of a possible … prison sentence for failing to report on something that confuses [him]." J.S. Decl., R. 124-19, PageID #4926-4927. Doe F described agonizing over SORA's convoluted requirements as his fiancé was dying:

> [T]he doctors would call our hospital room or I'd have to call down and order [my fiancé's] lunch food, because [if] I used the hospital phone do I have to register the hospital? If I was staying at a hotel for the night and I used their phone to call ... her mom to make sure that she was still alive do I have to register the hotel number? If she was unconscious or sleeping and friends texted her phone and I'd respond using her phone do I have to register her number?

Doe F Dep., R. 125-8, PageID #5170. He "would leave her hospital room at one in the morning and try to race home [hours away] every seven days if possible to step foot in [his] house," to comply with SORA's travel-reporting requirements. *Id.*, PageID #5169.

Registrants also isolate themselves to avoid the harassment that they—and

22

their families—face from being branded as "sex offenders." Some don't live with loved ones to avoid having the family home listed on the registry. SOMF, R. 123-1, PageID #3824. Others don't enroll in college because the school would alert everyone on campus that a "sex offender" was present. *Id.*, PageID #3816. T.P. testified that the only thing "worse than being on the [online registry] … was the death of one of my daughters who died from cancer at ten years old." T.P. Decl., R. 124-15, PageID #4901.

Defendants' efforts to minimize SORA's life-altering impact by focusing on a few isolated provisions fail. The Court must analyze those burdens *cumulatively. See* Section I.A. Moreover, Defendants concede that SORA "might be onerous" when arguing SORA isn't vague. Defs.' Suppl. Br., R. 162, PageID #8827, 8830; Defs.' Br., Doc. 70, at 89. Indeed, it is. While MSP has *for now* allowed mail-in updates for *some* minor information, registrants must still report many trivial changes in person within three days—like getting paid to mow a neighbor's lawn, volunteering at a soup kitchen, or using another university's library. Obligations Summary, R. 123-3. In-person reporting takes some registrants up to three hours, and can require significant travel and multiple visits to provide just one update. Registrants, depending on their tier and lifespan, may experience that hundreds of times. SOMF, R. 123-1, PageID #3788-3791. The government's "position that these in-person reporting requirements were 'no

23

worse than having to appear in person to secure a driver's license'—an event generally required once every eight years—is without merit given that these requirements are wholly dissimilar." *Betts*, 968 N.W.2d at 511 n.16. Defendants' comparison to filing taxes—which one can do from home—is equally inapt. And while *everyone* is subject to sanctions for license/tax violations, SORA (like probation/parole) criminalizes conduct that *cannot result in incarceration for the general public*.

In sum, as Defendants' own expert testified, "being put on the registry [is] a big deal." Salter Dep., R. 125-18, PageID #5488.

### 3. Michigan's Registry Serves Traditional Aims of Punishment.

This Court found that SORA 2011 "advances all the traditional aims of punishment" because "it looks back at the offense (and nothing else) in imposing its restrictions." *Does I*, 834 F.3d at 704. As the district court concluded, "[n]one of this changed with SORA 2021." Op., R. 158, PageID #8692; *see Lymon*, 2024 WL 3573528, at *10-11.

### 4. Michigan's Automatic, Unreviewable, Perpetual Registration Requirements Are Not Rationally Related to Any Non-Punitive Purpose.

As in *Does I*, the record here "provides scant support for the proposition that SORA in fact accomplishes its professed goals." 834 F.3d at 704; *id.* ("offense-based public registration has, at best, no impact on recidivism"). SORA

24

remains irrational because the research conclusively shows that registries don't work. Pls.' Br., Doc. 67, at 34-36, 44-58; SOMF, R. 123-1, PageID #3739-3748; Ten Scholars' Amicus Br., Doc. 62. "None of [Defendants'] experts defended [SORA] as an effective method for reducing sexual victimization." Hanson Rebuttal Rept., R. 123-8, PageID #4177. Rather, they testified that "the research has been pretty consistent that [registries are] not effective." Turner Dep., R. 126, PageID #5681. Courts increasingly agree. Pls.' Br., Doc. 67, at 50.

Indeed, based on a review of court opinions and criminal-history searches, **SORA couldn't have prevented _any_ of the crimes Defendants' brief highlights,** Doc. 70, at 70-71, **because _none_ were committed by people on a registry**. _See_ Socia Rept., R. 123-11, PageID #4330-4331 (90-95% of sex crimes are committed by people with no record of sexual offending—not by registrants).

Defendants—relying on inadmissible evidence[15]—contend that registries encourage victims to come forward. But _admissible_ evidence shows that registries _discourage_ victims from reporting crimes. Baliga Rept., R. 131-3, PageID #8051-8057. Indeed, many victims "oppose the registry in the strongest terms" because it couldn't have prevented the harm they experienced and doesn't meet their

---

[15] Defs.' Lay Witness Declarations with Inadmissible Statements Highlighted, R. 131-12; Pls.' Br., R. 131, PageID #7972-7974; Pls.' Resp. to Defs.' Facts, R. 131-1, PageID #7982-7983.

needs. Amicus Br. of Certain Individuals Impacted by Sexual Violence, Doc. 60, at 5. Nor do Defendants' other justifications for the registry—deterrence and warning the public—provide a rational explanation for a registry as sweeping as Michigan's. Pls.' Br., Doc. 67, at 56-58.

### 5. Michigan's Automatic, Unreviewable, Perpetual Registration Requirements Are Excessive in Relation to Any Non-Punitive Purpose.

Even if the Court sees some rationality, SORA's "punitive effects ... far exceed even a generous assessment of [its] salutary effects." *Does I*, 834 F.3d at 705; *see Betts*, 968 N.W.2d. at 513-15. The central features of SORA 2011 that this Court found excessive in *Does I*—automatic, perpetual registration with "no provision for individualized assessments" or opportunity for removal, public stigmatization, and burdensome yet pointless obligations—remain. *Does I*, 834 F.3d at 705. The district court correctly held that SORA's purposes cannot justify "chang[ing] the 'rules of the game'" to exact such "a heavy toll on registrants." Op., R. 158, PageID #8698.

The question is not whether *a* registry is excessive, but whether *this* registry is excessive. *This* registry is excessive because it requires 92% of people to register for 25 years or life based solely on their conviction, even though the record—including **the state's own data on Michigan registrants**—shows that recidivism risk varies and drops dramatically over time. Pls.' Br., Doc. 67, at 27-

26

34. As the district court found, "for most registrants, the risk of being convicted of a new sex offense **is no higher than the risk for non-registrants** after a registrant has lived in the community without a conviction **for 10 years**" and "even for the highest risk offenders, **the recidivism risk matches that of non-registrants after 20 years**." Stay Op., R. 192, PageID #9502 (emphases added). Today, between 17,000-19,000 Michigan registrants are no more likely to commit a sex offense than non-registrants, and many more will reach that point as time goes by.[16] SOMF, R. 123-1, PageID #3748-3768.

In analogous contexts, courts recognize that restrictions on people convicted of sex offenses become irrational over time. *See*, *e.g.*, *United States v. Carter*, 463 F.3d 526, 531-32 (6th Cir. 2006) ("no reasonable relationship between [supervised release conditions] and … deterrence, public protection or rehabilitation" when sexual conviction occurred decades earlier); *United States v. Johnson*, 756 F.3d 532 (7th Cir. 2014) (insufficient "temporal connection" to justify conditions based on 15-year-old sex-offense); *United States v. Scott*, 270 F.3d

---

[16] Defendants say that registrants aren't being compared to average members of the public but to previously incarcerated people. Defs.' Br., Doc. 70, at 51. In fact, this comparison is conservatively based on rates for "a first-time sexual offense conviction for males in the general population." Data Rept., R. 123-6, PageID #3953; *see* Hanson Rebuttal Rept., R. 123-7, PageID #4018-4020 (explaining methodology).

632, 636 (8th Cir. 2001).[17]

*This* registry is excessive because the vast majority of people have no opportunity for removal *ever*. Indeed, even someone like Doe C, whose registrable conviction involved sex with his now-wife when she was underage, can never seek removal. SOMF, R. 123-1, PageID #3703-3704. Courts have found registries excessive where, as here, there is "no mechanism" to shorten the registration period "even on the clearest proof of rehabilitation." *Wallace*, 905 N.E.2d at 384; *Starkey*, 305 P.3d at 1030; *Doe*, 189 P.3d at 1017; *Doe*, 111 A.3d at 1100.

*This* registry is excessive because it imposes onerous immediate reporting requirements for a mind-numbing list of trivial information, under penalty of imprisonment, even though "frequent, in-person appearances before law enforcement [] appear[] to have no relationship to public safety at all." *Does I*, 834 F.3d at 705. Indeed, MSP doesn't use the registry for investigative purposes or even enter into its database all the information reported. SOMF, R. 123-1, PageID #3743, 3746-3748. "There is a dramatic mismatch" between the state's interest and the compelled "disclosure regime [it] has implemented in service of that end." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 612 (2021).

---

[17] In the supervised-release context, as here, courts ask whether restrictions are "reasonably related" to deterrence, public safety, or rehabilitation, and are more restrictive "than is reasonably necessary" to those ends. 18 U.S.C. §3583(d).

*This* registry is excessive because SORA imposes up to ten years' imprisonment, *plus* mandatory probation/parole revocation, for the slightest slip-up, M.C.L. §28.729, costing the state millions. Levine Rept., R. 123-18, PageID #4629-4630, 4646-4652. Yet SORA compliance violations don't correlate with recidivism. SOMF, R. 123-1, PageID #3743.

*This* registry is excessive to any public-information goal because it doesn't simply provide conviction information. Rather, it stigmatizes all registrants as dangerous pariahs, encourages mapping and tracking of registrants, and subjects them to harassment and vigilantism. Pls.' Br., Doc. 67, at 22-26; *see id.* at 47-48 (other sources provide more comprehensive conviction information).

Defendants offered no admissible evidence to rebut Plaintiffs' showing of excessiveness. They point out that sexual offending is underreported. But that is a red herring: the relevant question is whether *registrants* are more likely to commit sex offenses than are *non-registrants*. There are undetected offenses in both groups, and the detection rate is the same for both groups. Thus, underreporting doesn't change the fact that over time, even registrants who are initially higher risk cease to present any more risk than non-registrants. Pls.' Br., Doc. 67, at 32; Ten Scholars' Amicus Br., Doc. 62.

***

Plaintiffs don't contend that *all* registries are punitive. *This one is*. As in

29

*Does I*, SORA's professed rationales cannot justify a law so untethered from its stated goals.

### D.    Defendants' Other Arguments Lack Merit.

#### 1.    SORNA Cases Are Inapposite.

Defendants—hoping that this Court will ignore the record, *Does I*, and the *Mendoza-Martinez* analysis—argue that *Willman v. Attorney General of United States*, 972 F.3d 819 (6th Cir. 2020), which concerned the legality of SORNA, "is controlling." Defs.' Br., Doc. 70, at 26-31. That argument fails.

First, the district court correctly held that *Does I* is "controlling in that it describes the framework used to analyze ex post facto challenges to SORA": the intent-effects test. Op., R. 158, PageID #8684. Courts cannot avoid the required legal analysis just because in a different case about a different statute, a panel rejected a cursory ex post facto claim tossed into a kitchen-sink complaint. Rather, as *Does I* makes clear, courts must analyze the challenged law under the applicable test based on the factual record. 834 F.3d at 701-05; *see Wasden*, 982 F.3d at 791-93 (error to assume outcome controlled by prior, inapposite registry cases; court must consider effect of *this* registry law "in its entirety"); *United States v. Juv. Male*, 590 F.3d 924, 931 (9th Cir. 2010) (juvenile registration under SORNA is punitive because the case "presents substantially different facts [than *Smith*] … that significantly affect our analysis"), *judgment vacated as moot*, 564 U.S. 932

(2011).

Second, Defendants' reliance on SORNA doesn't change the reality that SORA 2021 retains nearly all the 2011 amendments that this Court already invalidated in *Does I*. Moreover, if there *were* tension between *Does I* and *Willman*, "the earliest opinion normally controls." *Miller v. Caudill*, 936 F.3d 442, 447 (6th Cir. 2019).

Third, SORNA and SORA are structurally different. SORA establishes a registry, M.C.L. §28.721 *et seq.*; SORNA doesn't. Rather, SORNA (1) *incentivizes states* to adopt certain features in their state registry laws, 34 U.S.C. §20927, and (2) provides for individual *federal* criminal liability for failure to report to *state registration authorities*, **but only where there is federal jurisdiction**. *See* 18 U.S.C. §2250(a)(2) (requiring federal conviction or interstate travel); 28 C.F.R. §72.8(a). Indeed, there is no "federal police power" that would enable Congress to regulate "purely intrastate conduct." *United States v. Kebodeaux*, 570 U.S. 387, 403 (2013) (Roberts, C.J., concurring). SORNA is entirely parasitic on state registries: the federal government doesn't maintain its own registry, and there is no way to register federally. Pls.' Resp. to Defs.' Facts, R. 131-1, PageID #7999-8000. The federal database simply "compiles the information obtained through the … registration programs of the states," 86 Fed. Reg. 69856 (Dec. 8, 2021), and the national website lists people subject to internet publication on their state's

31

website. 34 U.S.C. §20922.

Thirty-two states[18] have declined to adopt SORNA-preferred features in their state systems because such expansive registries are costly,[19] ineffective, and counterproductive.[20] As a result, how people experience SORNA varies across the country and is highly dependent on the vagaries of each state's registration regime. Thus, for example, a federally convicted registrant might be labeled online as a "sex offender" in a state with an expansive, conviction-based online registry, but not in another state with a more tailored risk-based system. Pls.' Resp. to Defs.' Facts, R. 131-1, PageID #8000.

---

[18] Department of Justice, *SORNA Implementation Status*, https://smart.ojp.gov/sorna/sorna-implementation-status (last visited Dec. 16, 2025). While all states have registries, they vary greatly as to who must register, for how long, whether there is individualized assessment/paths for removal, etc. Pls.' Resp. to Defs.' Facts, R. 131-1, PageID #7997-7998.

[19] States rejecting SORNA have found that implementation costs dwarf any lost federal funds. Pls.' Resp. to Defs.' Facts, R. 131-1, PageID #7998. Many states continue to receive federal funding despite deviating from SORNA's retroactivity guidelines, *id.*, PageID #8012-8013, in part because the federal government, in determining whether a jurisdiction qualifies for funding, must consider judicial rulings. 34 U.S.C. §20927(b). The federal government continued Michigan's funding after both *Does I* and the *Does II*'s year-long suspension of SORA enforcement. Pls.' Resp. to Defs.' Facts, R. 131-1, PageID #7999.

[20] SORNA sets out the federal government's preferred registration provisions, but it is a state's "sovereign prerogative" to "choose[] not to comply with SORNA." *United States v. Felts*, 674 F.3d 599, 604 (6th Cir. 2012). Congress "did not"—and could not—"insist that the States" adopt SORNA-based laws. *Kebodeaux*, 570 U.S. at 398.

SORA also "deviat[es] from its federal counterpart" and "is stricter" than SORNA. *Betts*, 968 N.W.2d at 519 & n.27; Pls.' Resp. to Defs.' Facts, R. 131-1, PageID #8001-8002 (listing differences); Pls.' Resp. to MTD, R. 44, PageID #1549-1551 (same). For example, while SORNA encourages states to have online registries, 34 U.S.C. §20920, Michigan doesn't simply publish public record information; it chose to build a website whose "design, language, and functionality ... present each person listed as a current danger to society." Lageson Rept., R. 123-14, PageID #4484. The reporting requirements differ too. For example, while both statutes require reporting of student status, only SORA requires immediate in-person reporting whenever a student is "present at any location" "[a]s part of [their] course of studies." *Compare* 34 U.S.C. §20915(c), *with* M.C.L. §28.724a(1)(b). Further, SORNA *mandates* that registration terms "*shall*" be reduced for certain registrants who maintain a clean record. 34 U.S.C. §20915(b)(1) (emphasis added). Under SORA, by contrast, such relief is *discretionary*, the few petition-eligible registrants must navigate a stringent petitioning process, and courts must consider factors *beyond* the clean record in order to grant relief. M.C.L. §28.728c. SORA also imposes fees under penalty of incarceration. *Id.* §§28.725a(6), 28.729(4). SORNA doesn't. These differences matter for measuring each statute's actual effects under *Mendoza-Martinez*.

Finally, cases cited by Defendants are inapposite. *Willman*'s "terse" analy-

33

sis "offer[s] no guidance," and "the factual context and legal issues in *Willman* differ" from those here. Op., R. 158, PageID #8681-8682. Similarly, *United States v. Felts*, 674 F.3d 599 (6th Cir. 2012), on which *Willman* relied, "is not applicable." Op., R. 158, PageID #8682-8683. *Felts* held that a failure-to-register conviction under SORNA didn't violate the Ex Post Facto Clause because it punished the *new offense* of failing to register, not the *original* sex offense. 674 F.3d at 605-06. *Felts* never considered whether SORNA's restrictions *themselves* constitute *punishment* for an underlying pre-SORNA offense.

Nor are the out-of-circuit cases cited in *Willman* helpful. Some have been overruled[21] or distinguished in subsequent cases *allowing* ex post facto challenges.[22] Many, like *Felts*, addressed whether *failure-to-register prosecutions* were retroactive, not whether *the registration statute itself* imposed punishment.[23] Almost all arose from appeals of criminal convictions for failure to report, as

---

[21] *United States v. Leach*, 639 F.3d 769, 773 (7th Cir. 2011), *overruled by Koch v. Vill. of Hartland*, 43 F.4th 747 (7th Cir. 2022).

[22] *United States v. Wass*, 954 F.3d 184 (4th Cir. 2020), *distinguished by Prynne*, 848 F. App'x at 99-103; *United States v. Elkins*, 683 F.3d 1039, 1045 (9th Cir. 2012), *distinguished by Wasden*, 982 F.3d at 792.

[23] *United States v. Guzman*, 591 F.3d 83, 94 (2d Cir. 2010); *United States v. Shenandoah*, 595 F.3d 151, 158-59 (3d Cir. 2010); *Elkins*, 683 F.3d at 1045; *United States v. Lawrance*, 548 F.3d 1329, 1336 (10th Cir. 2008).

opposed to global civil challenges to SORNA's *cumulative* requirements.[24]

Further, registrants didn't attempt to develop factual records,[25] and in most cases

their claims were simply brushed aside with citations to earlier cases,[26] many of

which themselves relied on now-disproven "junk science." *See* Socia Rept., R.

123-11, PageID #4335-4338; Ten Scholars' Amicus Br., Doc. 62. The research—

and the fact that we know much more now than when early registry cases were

decided—matters. *See* Pls.' Br., Doc. 67, at 48-50.

This Court should rely on cases that apply the *Mendoza-Martinez* factors to

*Michigan*'s law. *See Does I*, 834 F.3d at 701-06; *Betts*, 968 N.W.2d at 508-15;

*Lymon*, 2024 WL 3573528, at *6-14 (SORA 2021 punitive for non-sex offenders;

analysis of at least three *Mendoza-Martinez* factors applies equally to people *with*

sex offenses).

---

[24] *United States v. Parks*, 698 F.3d 1, 6 (1st Cir. 2012); *United States v. W.B.H.*, 664 F.3d 848, 860 (11th Cir. 2011). Defendants' intermediate state-court appellate cases were also criminal appeals without factual records. *People v. Kiczensk*i, No. 364957, 2024 WL 4595174 (Mich. Ct. App. Oct. 28, 2024); *In re Harder*, No. 368645, 2025 WL 825907 (Mich. Ct. App. Mar. 14, 2025) (adopting *Kicenski*).

[25] *See, e.g.*, *United States v. Young*, 585 F.3d 199, 206 (5th Cir. 2009) (registrant "ma[de] no effort to prove that the effect of SORNA" was punitive).

[26] *See, e.g.*, *Wass*, 954 F.3d at 193; *Bacon v. Neer*, 631 F.3d 875, 878 (8th Cir. 2011).

## 2. Defendants' Suggestion that Plaintiffs and Courts Have Blessed SORA 2021 Is False.

Contrary to Defendants' contentions, neither Plaintiffs nor the courts have said SORA 2021 eliminated the law's constitutional infirmities. *Does II* plaintiffs decried the "legislature's abject failure to pass a statute that responds to the judicial rulings," explaining that SORA 2021 "fails to address many of the constitutional deficiencies." SOMF, R. 123-1, PageID #8003-8004 (citing *Does II*, 2:16-cv-13137, Pls.' Mot. for J., R. 107, PageID #2144). Plaintiffs argued that SORA 2021 "'in some respects makes the law even more punitive,'" and the court noted those challenges would need to be brought in a subsequent lawsuit. *Does II*, 606 F. Supp. 3d 608, 613 (E.D. Mich. 2021). Similarly, dicta in the procedural history section of *Does v. Whitmer*, 69 F.4th 300, 303 (6th Cir. 2023), a case rejecting damages liability for Michigan's continued enforcement of SORA 2011 after *Does I*, doesn't change the reality that—as that panel recognized—"SORA [2021] is the subject of separate litigation." *Id.* at 303 n.1.

## E.    This Court Should Affirm the District Court's Remedy and Clarify the Constitutional Limits on Retroactive Registration.

*Betts* and *Does II* held that SORA 2011 couldn't be retroactively applied because its unconstitutional provisions weren't severable. *Betts*, 968 N.W.2d at 514-21; *Does II*, 449 F. Supp. 3d at 731-35. Here the district court, recognizing that severability is a state-law question, likewise correctly enjoined the statute's

retroactive application, while leaving to the legislature the task of revising SORA so that its cumulative effects are no longer punitive. Op., R. 171, PageID #9162-9169; Am. J., R. 177, PageID #9379, 9391; Pls.' Mot. for J., R. 167, PageID #8994-9002.

This Court should affirm that remedy. Michigan's legislature has many options to turn SORA's punitive scheme into a permissible regulatory one. For example, it can limit registration to people who *currently* pose a danger. *See Kansas v. Hendricks*, 521 U.S. 346, 347, 357, 360-64 (1997) (civil commitment law not punishment because it "unambiguously requires a finding of dangerousness," not just past conviction; state took "great care" to limit application to "only a narrow class of particularly dangerous individuals … after meeting the strictest procedural standards"). Or Michigan can reduce the "magnitude of the restraint" and revise registration requirements so that any "categorical [conviction-based] judgments" are "reasonable." *Smith*, 538 U.S. at 103-04.

Plaintiffs here include *Does I* plaintiffs who, after almost 15 years of litigation, remain subject to a law with the same core defects this Court invalidated in 2016. Enough is enough. To avoid a *Does IV*, this Court should clarify what Michigan may not do. It cannot retroactively:

- Automatically impose stigmatizing public registration for decades or life based on stereotypes, when the evidence shows that most registrants

37

pose the same risk as non-registrants after ten years in the community,
and all do after 20 years.

- Deny *any* opportunity for removal, even for people who are rehabili-
  tated, old, or infirm.

- Require onerous, in-person reporting, or require reporting of informa-
  tion that law enforcement does not *need* or *use.*

In short, the Court should remind Michigan that while it can have a registry, it
must respect constitutional limits.

## II.   SORA 2021'S RETROACTIVE EXTENSION OF REGISTRATION TERMS TO LIFE VIOLATES THE EX POST FACTO CLAUSE.

Before 2011, nearly three quarters of Michigan's registrants had 25-year
terms. SOMF, R. 123-1, PageID #3722. Many entered plea deals in reliance on
that time limit. *Id.*, PageID #3837-3839. In 2011, Michigan retroactively extended
to life the registration terms of 17,000 people; suddenly, almost three-quarters of
Michigan's registrants were SORA "lifers." *Id.*, PageID #3722.

In *Does I*, plaintiffs challenged retroactive lifetime registration,[27] but this
Court didn't reach the issue because it invalidated the 2011 amendments entirely,
so lifetime terms could no longer be applied to the plaintiffs. 834 F.3d at 706.

_____

[27] Pls.' Br., *Does I*, No. 15-2346, Doc. 32-1.

Despite this Court's ruling, Michigan retained retroactive life terms in SORA 2021, meaning former 25-year registrants—including the *Does I* plaintiffs—remain subject to SORA until they die.

The district court correctly and specifically held that retroactively extending registration terms violates the Ex Post Facto Clause.[28] Op., R. 158, PageID #8699 n.31; Op., R. 171, PageID #9168 n.11. Defendants don't address Count II at all, and have forfeited their appeal. *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018). If this Court nonetheless reaches the merits, it should recognize that not only does the analysis of Count I above apply equally here, but retroactive lifetime registration is an even more obvious ex post facto violation.

### A.    Retroactively Extending Registry Terms Contravenes the Core Purposes of the Ex Post Facto Clause.

The dangers that led to adoption of the Ex Post Facto Clause are the very ones presented by retroactive lifetime registration. The Clause assures that laws "give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver*, 450 U.S. at 28-29. There is also a "fundamental

---

[28] The district court didn't reach Plaintiffs' claims that retroactive term extensions violate Plaintiffs' plea agreements and due process. Op., R. 158, PageID #8679 n.16; 8731-8732.

fairness interest" when "the government refuses, after the fact, to play by its own rules, altering them in a way that is advantageous only to the State." *Carmell v. Texas*, 529 U.S. 513, 533 (2000).

Given SORA's life-altering consequences, registration is a key factor in plea decisions. SOMF, R. 123-1, PageID #3837-3839. As a criminal defense expert explained, though clients are concerned about incarceration, "the registry is often the biggest concern," given the "enormous difference between being convicted of an offense and being placed on the registry." Chartier Rept., R. 123-21, PageID #4707. Clients recognize that "the registry will affect every area of their lives and will continue to subject them to ongoing supervision," and decades of criminal jeopardy, long after prison. *Id.* Many people would have gone to trial had they known they would be subject to lifetime registration. SOMF, R. 123-1, PageID #3838-3839. By eliminating the finish line, Michigan did exactly what the Framers feared: used its "unmatched powers ... to sweep away settled expectations suddenly and without individualized consideration." *Landgraf*, 511 U.S. at 266.

### B.    Lifetime Registration Makes the *Mendoza-Martinez* Factors Weigh Even More Heavily Toward Punishment.

SORA is even more irrational and excessive when imposed for *life*. Both sides' experts agree that recidivism risk dramatically decreases over time, Pls.' Br., Doc. 67, at 30-32, and is highly correlated with age: older people are much less likely to recidivate, and few people over age 60 present any substantial risk.

40

SOMF, R. 123-1, PageID #3764-3765. Lifetime registration therefore "serve[s] no public protection function." Hanson Rept., R. 123-7, PageID #4007.

Further, SORA's obligations and restraints are more severe when they last until death. A life term "means [the] denial of hope … that good behavior and character improvement are immaterial." *Graham v. Florida*, 560 U.S. 48, 70 (2010). As E.S., who was sentenced to six months' probation for his 1998 offense, explained:

> Being switched to lifetime registration has been devastating ... I am now marked forever. Before, … there was a light at the end of the tunnel…. When I pled guilty, I was … prepared to endure [25 years on the registry]. But with lifetime registration … I will always be judged and compelled to explain whenever I do anything—even when my crime is 40 or 50 years old…. It seems unfair for me to have essentially been resentenced to life … for a crime for which I was never sentenced to jail or prison.

E.S. Decl., R. 124-22, PageID #4938-4939.

Life terms also acutely harm elderly people and those with disabilities. For example, a 74-year-old arthritic registrant described driving 100 miles every three months to report in person for his nearly 40-year-old conviction, his leg bones scraping painfully, all the while fearing that when he can no longer make the trip, he'll go to prison. G.O. Decl., R. 124-14, PageID #4895-4896. Officials wouldn't provide an alternative to in-person reporting when 68-year-old T.R. explained that, given his heart failure, he could barely climb the stairs out of his apartment. T.R. Decl., R. 124-18, PageID #4920-4921. Even people in nursing homes or who

are terminally ill must report in person. SOMF, R. 123-1, PageID #3829-3830. Inflicting such severe harm where people pose no demonstrable risk is excessive.

Finally, Defendants' primary argument—that *Willman* controls—is inapplicable to Count II. *Willman* doesn't address retroactive extension of registration terms. But numerous courts have held that such extensions are ex post facto violations. *See Doe v. Rausch*, 461 F. Supp. 3d 747, 767, 769 (E.D. Tenn. 2020) ("Defendants have not shown that the public is safer or that Plaintiff has been saved from recidivism by a lifetime of restrictions, as opposed to just ten years."); *Gonzalez v. State*, 980 N.E.2d 312, 317 (Ind. 2013) (extending registration to life is an "important additional restraint which leans in favor of treating the effects of the Act as punitive"); *Quispe del Pino v. Md. Dep't of Pub. Safety & Corr. Servs.*, 112 A.3d 522, 523 (Md. Ct. Spec. App. 2015) (extending registration from 10 to 25 years is ex post facto violation); *Doe*, 62 A.3d at 140 (invalidating retroactive lifetime registration as "the equivalent of … probation for life"); *Doe*, 111 A.3d at 1100 (lifetime registration "without regard to whether [registrants] pose a current risk to the public" is "wholly punitive"); *Letalien*, 985 A.2d at 26; *Starkey*, 305 P.3d at 1030. Similarly, courts have held that retroactively imposing longer probation/parole terms than permissible at the time of an offense is an ex post facto violation. *See*, *e.g.*, *People v. Williams*, 246 Cal. Rptr. 464, 466 (Cal. Ct. App. 1988); *State v. Mendivil*, 592 P.2d 1256, 1258 (Ariz. 1979).

\*\*\*

The district court didn't grant separate Count II relief because its Count I relief barring SORA's retroactive enforcement also bars retroactive extension of registration terms. Am. J., R. 177, PageID #9379-9380. This Court could alternatively prohibit SORA's enforcement for a term longer than that in effect at the time of the person's offense.[29]

## III. SORA 2021'S CLASSIFICATION PROCESS FOR NON-MICHIGANDERS IS UNCONSTITUTIONAL.

The district court correctly enjoined SORA's application to non-Michiganders on two separate grounds: (1) Michigan's registration procedures violate due process, and (2) imposing harsher requirements violates equal protection.[30] Am. J., R. 177, PageID #9388. Defendants don't challenge the second ground, and their arguments on the first lack merit.

---

[29] Unlike on Count I (where excising myriad unlawful provisions across the sprawling statutory scheme would both render SORA unworkable and conflict with the Michigan Supreme Court's severability decision in *Betts*, 968 N.W.2d at 514-21), on Court II registration terms can be returned to those "prescribed when the crime was consummated" without rendering the remainder of the statute inoperable. *Weaver*, 450 U.S. at 30, 36 n.22 (to remedy an ex post facto violation, one must "apply, if possible, the law in place when [the] crime occurred"); *see* Pls.' Mot. for J., R. 167, PageID #9005-9008.

[30] The court didn't reach Plaintiffs' Privileges and Immunities Clause challenge. Op., R. 158, PageID #8739 n.55.

## A.    How Registration for Non-Michiganders Works

People who move to Michigan must register if (1) their offense is "substantially similar" to a registrable Michigan offense, M.C.L. §28.722(r)(xi), (t)(xiii), (v)(ix) ("Substantial-Similarity Provision"); or (2) they are "from another state [and] required to register … under a comparable statute of that state," *id.*, §28.723(1)(d) ("Home-State Provision"). MSP unilaterally decides whether non-Michiganders must register and for how long. To determine non-Michiganders' registration requirements, MSP first decides which (if any) registrable Michigan conviction is substantially similar to the out-of-state conviction, and next determines whether that provision or the Home-State Provision carries a longer registration term. SOMF, R. 123-1, PageID #3876-3877.

Michigan uses a worst-of-both-worlds approach, requiring people to register for "whichever [duration] is longer." Op., R. 158, PageID #8742. If a person's conviction is "substantially similar" to a registrable Michigan offense, they must register in Michigan even if their home state no longer requires registration. SOMF, R. 123-1, PageID #3880-3881. For example, Mary Doe and Doe G have completed their home-state 10-year registration terms but are lifetime registrants because MSP deems their convictions similar to Michigan Tier III offenses. *Id.*, PageID #3885-3888. Conversely, if a person's conviction is not "substantially similar" to a Michigan registrable offense, or they have completed Michigan's

44

registration term for the "substantially similar" offense, they must still register in Michigan for the duration of their home-state term. *Id.*, PageID #3881-3882.

Substantial-similarity determinations are consequential and complex. They can determine if a person must register, and if so, in which tier (which sets registration length, reporting frequency, and public/non-public registration). *Id.*, PageID #3877. As any judge who has wrestled with the "categorical approach" in other contexts knows, interjurisdictional comparisons "can vex even the most competent and experienced jurists." *Doe v. Pryor*, 61 F. Supp. 2d 1224, 1233 (M.D. Ala. 1999); U.S. Sent'g Comm'n, *Report to the Congress: Career Offender Sentencing Enhancements* 50 (2016) (cross-jurisdictional comparisons have "resulted in significant litigation and over a dozen Supreme Court opinions").[31] MSP itself "admitted that different people can reach different conclusions." Op., R. 158, PageID #8740; SOMF, R. 123-1, PageID #3879; MSP Emails, R. 126-24, PageID #6354 (debating whether Florida conviction was registerable in Michigan).

Determining registrability under the Home-State Provision is also difficult.

---

[31] To resolve Plaintiffs' vagueness challenge to the term "substantially similar," Defendants agreed that comparisons must be based on element-to-element comparisons ("categorical approach"). Am. J., R. 177, PageID #9386. MSP had previously relied on unproven allegations about offense conduct. SOMF, R. 123-1, PageID #3883-3884.

Just like in Michigan, amendments and litigation impact other states' registry laws. But MSP doesn't monitor those developments to ensure removal of people who are no longer required to register in their home state (and aren't registrable under the Substantial-Similarity Provision). SOMF, R. 123-1, PageID #3882.

Despite the complexity and high stakes of these decisions, MSP uses front-line staff and even *interns* to assign tier classifications. Of over 2,200 out-of-state offenses on MSP's classification spreadsheet, only 18 show the cross-jurisdictional comparison was "approved by MSP legal." *Id.*, PageID #3877-3879. Nor does MSP systematically document *which* Michigan offense it deems "substantially similar," meaning MSP *itself* doesn't know how it determined non-Michiganders' tier classifications. *Id.* (only 43 of 2,200 out-of-state offenses list the "substantially similar" Michigan offense). MSP's *own analysts* couldn't explain why Mary Doe and Doe G are lifetime Tier III registrants—even though 25-year Tier II offenses seem more equivalent to their out-of-state convictions— because MSP never wrote down what Michigan offense it had deemed "substantially similar." *Id.*, PageID #3885-3888.

**B.    Defendants Subject Non-Michiganders to SORA Without Due Process.**

Due process requires notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation omitted). Because Defendants provide neither, the district court correctly

held that MSP's procedures for out-of-staters are "constitutionally deficient." Op., R. 158, PageID #8740-8741.

### 1. MSP's Decision Is Material to SORA's Scheme and Implicates a Protected Liberty Interest in Correct Classification.

Procedural due process is required because MSP's determinations are "material to the State's statutory scheme." *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 4 (2003). Unlike for Michiganders, registration for out-of-staters doesn't "turn on [the fact of] conviction alone." *Id.* at 7. Rather, MSP's assessment of (1) whether offenses are "substantially similar" and (2) what the home-state's registry requires, controls non-Michiganders' registration obligations. Because registration determinations for out-of-staters turn on matters beyond the fact of conviction, numerous courts have recognized that procedural protections to ensure those determinations' fairness and accuracy are constitutionally required. *See*, *e.g.*, *Meredith v. Stein*, 355 F. Supp. 3d 355, 364-65 (E.D.N.C. 2018); *Kvech v. N.M. Dep't of Pub. Safety*, 987 F. Supp. 2d 1162, 1213 (D.N.M. 2013); *Creekmore v. Attorney Gen. of Tex.*, 341 F. Supp. 2d 648, 664-66 (E.D. Tex. 2004); *Pryor*, 61 F. Supp. 2d at 1233-34; *Pierre v. Vasquez*, No. 20-cv-224-LY, 2022 WL 3219421, at *6 (W.D. Tex. Aug. 9, 2022).

Defendants say "substantial similarity" determinations are "immaterial" because out-of-staters necessarily also have registration obligations under the

Home-State Provision. But that is untrue. MSP assesses "substantial similarity" *regardless* of whether people must register in their home state. SOMF, R. 123-1, Page ID #3881. And, under Michigan's "worst-of-both-worlds" approach, Michigan then requires registration under the Substantial-Similarity Provision for those who aren't (or are no longer) registrable in their home state. *Id.*; *see* Section III.A.

Defendants contend that SORA doesn't implicate a protected liberty or property interest.[32] But courts of appeals—including this Court—uniformly recognize a liberty interest in avoiding "*wrongful* classification as a sex offender." *Hart v. Hillsdale Cnty.*, 973 F.3d 627, 644 (6th Cir. 2020) (collecting cases).[33] In *Hart*, this Court concluded that, although the plaintiff had "committed a sex offense," he was not "a 'sex offender' within the meaning of SORA" because, under amendments to SORA, he no longer had to register. *Id*. He therefore had a liberty interest in contesting the state's "representation ... that he belonged in the category of 'sex offenders' who were required to register." *Id. Hart* cited approvingly to *Schepers v. Commissioner*, 691 F.3d 909 (7th Cir. 2012), which noted

---

[32] *But see* M.C.L. §28.725a(6) (imposing fees).

[33] Because *Hart* recognized a liberty interest in avoiding misclassification, *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir. 1999), is irrelevant. There, the plaintiff asserted a liberty interest based on vague privacy claims and speculation about future job prospects that are not raised here. *Cutshall* also addressed a much less onerous first-generation registry.

48

that the risk of "erroneous labeling" at a higher classification level within a system of "tiered registration levels" gave rise to a protected liberty interest. *Id.* at 914; *see Meredith*, 355 F. Supp. 3d at 364-65 (it "is plainly true" that registration "deprives the registrant of substantial liberty interests"); *Doe v. Wasden*, 558 F. Supp. 3d 892, 911 (D. Idaho 2021); *Kvech*, 987 F. Supp. 2d at 1202; *Creekmore*, 341 F. Supp. 2d at 665.

As in *Hart* and *Schepers*, Plaintiffs like Mary Doe and Doe G have a protected liberty interest in not being subjected to SORA erroneously or for longer/harsher terms than SORA requires.

### 2. Michigan's Procedures for Out-of-Staters Violate Due Process.

An "essential element[]" of due process is notice of the "basis for government action." 3 Ronald D. Rotunda & John E. Nowak, *Treatise on Const. L.* §17.8(a) (Sept. 2025 update). Here, that means the government must "adequately advise[] [registrants] of the reasons" for its decisions. *Hamby v. Neel*, 368 F.3d 549, 560 (6th Cir. 2004). Yet Michigan provides *no* such notice. Op., R. 158, PageID #8740-8741, 8741 n.56. As Defendants previously admitted,[34] out-of-staters do *not* get a letter explaining their tier, how MSP determined their reporting obligations (*e.g.*, per Substantial-Similarity or Home-State Provision), or which

---

[34] Defs.' Resp. to Pls.' Facts, R. 129-2, PageID #7547.

49

Michigan offense MSP deemed "substantially similar." Out-of-staters merely get the standard verification form listing their tier level (R. 126-17) when they report upon arrival. M.C.L. §28.724(6). They are left "to guess at the factual and legal bases for" MSP's decisions, which is "no[] substitute for actual notice." *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 986-87 (9th Cir. 2012).

Ensuring registrants can "present [their] side of the case … [has] obvious value in reaching an accurate decision." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985). Here, registrants have *no opportunity whatsoever* for input into MSP's decision-making. Nor can they contest the decision once made. As MSP's legal advisor testified, "there's nothing in the statute that provides for review"; there is no independent decision-maker, appeal process, notice of appeal rights, or application of Michigan's Administrative Procedures Act. Beatty Dep., R. 126-1, PageID #5766. Registrants' sole recourse is to ask MSP—after the decision is made—to decide for itself whether it made a mistake. Op., R. 158, PageID #8741 n.56.

Contrary to Defendants' contentions, this "right to be heard" *in the decision-making process*, *Mathews*, 424 U.S. at 333, cannot be satisfied by the theoretical availability of litigation (for those who can afford it) to contest an unexplained governmental decision after it's made. A post-decision lawsuit is "a

lengthy and speculative process" that doesn't always "make the complainant entirely whole" and is therefore "constitutionally inadequate." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982) (quotation omitted). Defendants also argue that non-Michiganders get the process due from the courts that convict them. But non-Michiganders get *zero* process for the determination at issue: whether the out-of-state conviction triggers registration in Michigan, and if so, at what tier level.

Non-Michiganders have "a weighty interest in an accurate determination." *Pryor*, 61 F. Supp. 2d at 1233. Meanwhile, the risk of error is substantial—especially where decisions are made by "employee[s] without clear qualifications" (not to mention interns), and without explanation, objective standards, or registrant input. *Id.* The government too has an interest in not expending time and resources registering people who aren't actually subject to SORA. The district court thus concluded that some kind of judicial decision-making is warranted, Op., R. 158, PageID #8741, leaving to the legislature the "final choice" of what form it should take. Op., R. 171, PageID #9171-9172.

### 3. Defendants' Full-Faith-And-Credit Argument Is Meritless.

The district court correctly held that Defendants' argument under the Full Faith and Credit Clause was both forfeited and meritless. Op., R. 192, PageID #9497. Just because Michigan must accept the validity of non-Michigan *convic-*

51

*tions* doesn't mean that Michigan is obliged to follow other states' *registration laws*.[35] On Defendants' theory, whenever other states have different laws regulating people with convictions—say, occupational licensing regulations—the Full Faith and Credit Clause would require *Michigan* to apply the convicting state's restrictions. Nonsense.

*In re Harder* directly contradicts Defendants' theory. No. 368645, 2025 WL 825907 (Mich. Ct. App. Mar. 14, 2025). There, the court held that Harder must register in Michigan, even though Iowa no longer required him to, because the Full Faith and Credit Clause doesn't entitle "Iowa [to] force Michigan to conform to" its registration law. *Id*. at *7. As the district court correctly concluded, *Harder* "disposes of Defendants' argument." Op., R. 192, PageID #9497.

### C.    SORA 2021 Violates Equal Protection by Subjecting Non-Michiganders to Harsher Treatment.

Defendants' brief doesn't even *mention* the district court's equal protection ruling, thereby forfeiting any challenge. *Wilkerson*, 910 F.3d at 256. This Court considers "negligently forfeited" arguments only "in exceptional circumstances or when a plain miscarriage of justice would otherwise result." *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1012 (6th Cir. 2022). Neither applies here.

_____

[35] Defendants point to the Home-State Provision, but that turns on registration requirements in the foreign jurisdiction, not the out-of-state conviction. M.C.L. §28.723(1)(d).

Should the Court nevertheless consider this issue, it should affirm. SORA explicitly differentiates between Michiganders and "individual[s] from another state." M.C.L. §28.723(1)(d). Defendants don't dispute that SORA treats non-Michiganders "more harshly." Op., R. 158, PageID #8743. For out-of-staters, Michigan imposes the harsher of Michigan's and the home-state's requirements. Many out-of-staters—*just because they're not from Michigan*—are therefore subject to SORA for longer than Michiganders convicted of "substantially similar" offenses. SOMF, R. 123-1, PageID #3880-3882. SORA also subjects out-of-staters to registration for conduct that in Michigan doesn't warrant registration *at all*—like sexual conduct by an eight-year-old, *id*.—or that Michigan doesn't even *criminalize*, like consensual sex with a 17-year-old. Op., R. 158, PageID #8742 n.59.

Strict scrutiny applies because SORA burdens registrants' fundamental right to travel. SORA denies out-of-staters their "right to be treated equally in [their] new State of residence" by subjecting them to harsher requirements than similarly situated Michiganders. *Saenz v. Roe*, 526 U.S. 489, 505 (1999). Defendants have never argued—nor could they—that such differential treatment survives strict scrutiny. There isn't even a rational basis for such discrimination. Indeed, Defendants have never "offer[ed] any explanation or justification" for it. Op., R. 158, PageID #8743.

53

Courts have repeatedly struck down registry schemes that treat out-of-staters worse than in-staters. For example, Pennsylvania couldn't deny arriving registrants a hearing before community notification when it afforded in-state residents such hearings. *Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95, 107 (3d Cir. 2008); *see Hendricks v. Jones*, 349 P.3d 531, 532 (Okla. 2013) (irrational to register people with out-of-state convictions where comparable group with in-state convictions were not registered); *ACLU of N.M. v. City of Albuquerque*, 137 P.3d 1215, 1227 (N.M. Ct. App. 2006) (same).

## IV. SORA 2021 IMPERMISSIBLY DENIES SIMILARILY SITUATED REGISTRANTS THE OPPORTUNITY TO PETITION FOR REMOVAL.

As detailed in Plaintiffs' opening brief, Michigan's petition-for-removal procedures violate the Equal Protection Clause. Contrary to Defendants' contentions, Plaintiffs don't dispute that the legislature can draw lines regarding eligibility for removal. Those lines, however, must be rational. *See Peoples Rts. Org. v. City of Columbus*, 152 F.3d 522, 532 (6th Cir. 1998) (courts must "ensure that the government has employed rational means to further its legitimate interest"). Having established criteria by which *some* registrants may seek removal,[36] equal protection principles require Michigan to make it available to

---

[36] Defendants' statement that 12% of registrants can petition is misleading. Only Tier I registrants (7% of the class) can petition under M.C.L. §28.728c(1),

other registrants who *are similarly situated* with respect to the State's interest. Pls.' Br., Doc. 67, at 61-67.

As Defendants agree, the State's distinction between petition-eligible and barred-from-petitioning registrants is only valid if it "'rest[s] upon some ground of difference having a fair and substantial relation to the object of the legislation.'" Defs.' Br., Doc. 70, at 81 (quoting *Johnson v. Robison*, 415 U.S. 361, 374-75 (1974)). The petitioning provision's objective is to allow people to demonstrate that registration is unwarranted because they're not "a continuing threat to the public." M.C.L. §28.728c(11).

Here, Plaintiffs' unrefuted evidence shows that tier levels (the basis for granting or denying petitioning rights) are unrelated to recidivism risk. Indeed, Defendants' experts agree that the offense of conviction doesn't predict risk. SOMF, R. 123-1, PageID #3770. Being convicted of a more serious offense[37] has no bearing on whether someone is rehabilitated, grows old, becomes disabled, or

—————————————

and then only if they meet the strict eligibility criteria. While people registered for juvenile adjudications (5% of the class) can petition, they must wait 25 years, not ten years like adults. Pls.' Br., Doc. 67, at 64 n.18; Data Rept., R. 123-6, PageID #3952-3954. Defendants argue that children are treated differently because of their "greater prospects for reform," Defs.' Br., Doc. 70, at 82, but by that logic, these registrants should wait less time, not more, before becoming petition-eligible.

[37] Further, Tier II/III offenses are not necessarily more serious than Tier I offenses. *See* Pls.' Br., Doc. 67, at 65.

otherwise doesn't pose a "continuing threat to the public." M.C.L. §28.728c(11). Moreover, SORA's tiers are *backward*, with people in Tier II/III posing a *lower recidivism risk* than those eligible to petition in Tier I. SOMF, R. 123-1, PageID #3768-3769.

Plaintiffs don't seek to dictate what criteria the legislature sets for petitioning; they seek the same chance to prove their rehabilitation as others who meet the chosen eligibility criteria. Such relief merely gives them an equal opportunity to *petition* for removal. Adjudicators would still exercise informed judgment and deny removal where a petitioner poses a danger—as courts do now with Tier I registrants and Tier III juvenile registrants (after 25 years). M.C.L. §28.728c(11).

## V.   AUTOMATIC, UNREVIEWABLE, PERPETUAL REGISTRATION IS IRRATIONAL.

On Count III, Defendants focus on the undisputed fact that sex crimes cause serious harm that states can seek to prevent. They spend pages describing terrible crimes, transparently urging this Court to act on emotion and ignore the record. But they don't address, much less rebut, Plaintiffs' actual argument: that SORA's automatic imposition of perpetual registration and pointless restrictions with no individual review or opportunity for removal *ever* cannot survive exacting

rational-basis review,[38] or even conventional rational-basis review.

First, Defendants don't address the district court's error in granting summary judgment based on inadmissible evidence without first ruling on Plaintiffs' objections. Instead, Defendants compound the error: they too rely, without comment, on "expert" reports that don't satisfy Fed. R. Evid. 702 (Turner, Salter, Lovell, Goodman); witnesses who lack personal knowledge (Jegla); and lay-witness opinion testimony (Bennetts, Dare, Prout). Pls.' Br., Doc. 67, at 51-53. Defendants also rely on non-record DOJ/SMART Office reports that are not only inadmissible, *id.*, but don't in fact support Defendants' argument. *See* Ten Scholars' Amicus Br., Doc. 62, at 14-19, 26-33 (eviscerating Defendants' claim that cited reports rebut the research consensus that conviction-based online registries are ineffective). Pls.' Br., R. 131, PageID #7967-7974; Pls.' Resp. to Defs.' Facts, R. 131-1, PageID #7978-7983.

Second, Defendants ignore Plaintiffs' argument that SORA's extreme features are subject to exacting scrutiny. Pls.' Br., Doc. 67, at 39-44.

Third, Defendants argue that *a* registry is rational but don't attempt to justify *this* registry. They can't explain why people must register for *decades or life* with no chance for removal *ever*, or why they must report a dizzying amount

---

[38] *See* Amicus Brief of Araiza et al., Doc. 58.

of information, often in person within three days, that law enforcement doesn't need or use.

Instead, Defendants respond to an argument Plaintiffs aren't making—that all registration must be based on cost-prohibitive, comprehensive, individual evaluations. As an initial matter, Defendants misrepresent the facts. Many states have risk-based registries.[39] The parties' experts agree that simple actuarial tests, whatever their limits, are far better than convictions at predicting risk.[40] Defendants' cost estimates are based on inadmissible, irrelevant evidence about the cost of the extensive evaluations used for post-release civil detention.[41] But MDOC *already* routinely conducts risk assessments that take only 15-60 minutes, and has been using actuarial tools since 2009, a cost already included in MDOC's budget.[42] Defendants also ignore that Michigan spends millions of dollars registering people who present no appreciable risk and incarcerating them for record-

---

[39] Zgoba Rept., R. 123-15, PageID #4543 ("many states do a better job than Michigan by using evidence-based methods for predicting risk"); *see* National Crim. Justice Reference Serv., *Sex Offender Risk Assessment* 24 (2022), https://www.ojp.gov/pdffiles1/smart/306898.pdf.

[40] SOMF, R. 123-1, PageID #3770-3771.

[41] Pls.' Br., R. 131, PageID #7967-7972; Pls.' Resp. to Defs.' Facts, R. 131-1, PageID #7978-7980, 8014-8015.

[42] SOMF, R. 123-1, PageID #3770-3777; Pls.' Resp. to Defs.' Facts, R. 131-1, PageID #8014-8015.

keeping failures.[43]

More fundamentally, recognizing the unconstitutionality of the current scheme *does not* mean the Court must mandate time-intensive individual risk assessments for every registrant. Plaintiffs seek much more modest relief: this Court should hold that automatically imposing a draconian regime of stigmatization, monitoring, and pointless restrictions for decades or life with *no* opportunity for removal or individual review *ever* is unconstitutional. There are many different ways to remedy this violation. *See* Pls.' Br., Doc. 67, at 59-60.

## VI. SORA'S SCIENTER REQUIREMENT DOESN'T INSULATE IT FROM VAGUENESS CHALLENGES.

Defendants' response to Plaintiffs' vagueness claim is that SORA's new "willfulness" requirement protects registrants from prosecution if they misunderstand their duties.[44] Not so. First, where a "scienter requirement modifies a vague term," it cannot cure the vagueness. *Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 138 (3d Cir. 2000); *Nova Recs., Inc. v. Sendak*, 706 F.2d 782, 789 (7th Cir. 1983); *Doe v. Harris*, 772 F.3d 563, 579 (9th Cir. 2014). Second, SORA's "willfulness" requirement is "extremely murky"—specific intent isn't

---

[43] Levine Rept., R. 123-18, PageID #4629-4630, 4646-4652.

[44] Defendants attempted to circumvent this requirement by compelling registrants to attest to understanding SORA—which the district court invalidated. Op., R. 158, PageID #8756-8760.

required. *People v. Lockett*, 659 N.W.2d 681, 682-83 (Mich. Ct. App. 2002). And "minimal circumstantial evidence will suffice to establish the defendant's state of mind." *People v. Collins*, No. 328853, 2016 WL 7427153, at *1 (Mich. Ct. App. Dec. 20, 2016); *see* Pls.' Suppl. Br., R. 163, PageID #8885.

Defendants minimize registrants' confusion as hypothetical. But it wasn't hypothetical when class member K.M. spent three years in prison because he misunderstood his reporting requirements. SOMF, R. 123-1, PageID #3873. Defendants also argue that if one can pay taxes, one can understand SORA. But there is no SORA equivalent to TurboTax or accountants to ascertain reporting requirements. Nor does research into SORA's requirements help if no answers are available.

## CONCLUSION

Preventing sex crimes is indisputably important. But Michigan's registry is an unconstitutional, devastating, counterproductive approach. In addition to the relief requested in Plaintiffs' opening brief, the Court should affirm the district court's ex post facto rulings, uphold the injunction on Count I, and clarify that relief on Count II can involve restoration of registrants' prior terms. On Count XI, the Court should find that Defendants' equal protection appeal is forfeited or, if it reaches the merits, affirm on both due process and equal protection.

Respectfully submitted,

s/ Miriam Aukerman (P63165)
s/ Ewurama Appiagyei-Dankah
  (P88212)
s/ Marty Berger (PA 335300)
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
eadankah@aclumich.org
mberger@aclumich.org

s/ Bonsitu Kitaba-Gaviglio
(P78822)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
bkitaba@aclumich.org

s/ Allison Frankel (NY 5621834)
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
afrankel@aclu.org

s/ Paul D. Reingold (P27594)
Cooperating Counsel,
American Civil Liberties Union
  Fund of Michigan
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319
pdr@umich.edu

*Attorneys for Plaintiffs-Appellants/Cross-Appellees*

Dated: December 17, 2025

## Certificate of Compliance

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the word counting feature of counsel's word processing programs shows that this brief contains 12,992 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Sixth Circuit Rule 32(b)(1).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(A)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

*s/ Miriam J. Aukerman*
Miriam J. Aukerman (P63165)
Attorney for Plaintiffs-
Appellants/Cross-Appellees

**Certificate of Service**

This brief will be served on December 17, 2025, on all counsel of record via the Court's ECF system.

 *s/ Miriam J. Aukerman*
Miriam J. Aukerman (P63165)
Attorney for Plaintiffs-
Appellants/Cross-Appellees

63

# ADDENDUM

## Designation of Relevant District Court Documents

## E.D. Mich. Case. No. 22-cv-10209

| Description of the Document | Date | District Court Record Entry Number | Page ID Numbers |
|---|---|---|---|
| Complaint | 02/02/2022 | 1 | 1-198 |
| Index of Exhibits | 02/02/2022 | 1-1 | 199 |
| Ex. 1 - Named Plaintiffs' Declarations | 02/02/2022 | 1-2 | 200-210 |
| Ex. 2 - Summary of SORA 2021's Obligations, Disabilities, and Restraints | 02/02/2022 | 1-3 | 211-227 |
| Ex. 3 - Dr. Karl Hanson Expert Report | 02/02/2022 | 1-4 | 228-397 |
| Ex. 4 - Dr. Elizabeth Letourneau Expert Report | 02/02/2022 | 1-5 | 398-452 |
| Ex. 5 - Dr. James J. Prescott Expert Report | 02/02/2022 | 1-6 | 453-502 |
| Ex. 6 - Dr. Kelly Socia Expert Report | 02/02/2022 | 1-7 | 503-553 |
| Ex. 7 - Dr. Kristen Zgoba Expert Report | 02/02/2022 | 1-8 | 554-598 |
| Ex. 8 - Dr. John Ulrich Expert Report | 02/02/2022 | 1-9 | 599-623 |
| Ex. 9 - Dr. Sarah Lageson Expert Report | 02/02/2022 | 1-10 | 624-671 |
| Ex. 10 - Barbara Levine Expert Report | 02/02/2022 | 1-11 | 672-698 |
| Ex. 11 - Anne Yantus Expert Report | 02/02/2022 | 1-12 | 699-707 |
| Ex. 12 - Richard Stapleton Expert Report | 02/02/2022 | 1-13 | 708-726 |
| Ex. 13 - *Does I* Stipulated Final Judgment | 02/02/2022 | 1-14 | 727-732 |
| Ex. 14 - SORA 2021 with Highlighted Changes Showing 2011 and 2021 Amendments | 02/02/2022 | 1-15 | 733-752 |
| Ex. 15 - Michigan State Police Letter to Registrants re SORA 2021 | 02/02/2022 | 1-16 | 753-758 |
| Ex. 16 - Explanation of Duties | 02/02/2022 | 1-17 | 759-764 |
| Ex. 17 - Michigan Sex Offender Registry Mail-In Update Form | 02/02/2022 | 1-18 | 765-768 |

| Ex. 18 - Judgment of Sentence Form CC219b | 02/02/2022 | 1-19 | 769-770 |
|---|---|---|---|
| Ex. 19 - Pre-2021 Explanation of Duties (Redacted) | 02/02/2022 | 1-20 | 771-773 |
| Ex. 20 - Petition to Discontinue Sex Offender Registration, Form MC 406a | 02/02/2022 | 1-21 | 774-776 |
| Ex. 21 - Order on Petition to Discontinue Sex Offender Registration, Form MC 406b | 02/02/2022 | 1-22 | 777-778 |
| Plaintiffs' Motion for Class Certification | 02/02/2022 | 5 | 800-831 |
| Index of Exhibits | 02/02/2022 | 5-1 | 832 |
| Ex. 1 - Miriam Aukerman Resume | 02/02/2022 | 5-2 | 833-837 |
| Ex. 2 - Paul Reingold Resume | 02/02/2022 | 5-3 | 838-846 |
| Ex. 3 - Roshna Bala Keen Resume | 02/02/2022 | 5-4 | 847-850 |
| Plaintiffs' Motion for Preliminary Injunction | 02/02/2022 | 7 | 857-946 |
| Order Appointing Class Counsel | 05/17/2022 | 34 | 1109-1115 |
| Order Granting Class Certification | 05/18/2022 | 35 | 1116-1121 |
| Defendants' Response to Preliminary Injunction Motion | 05/26/2022 | 39 | 1141-1222 |
| Ex. A - *Does II* Opinion | 05/26/2022 | 39-1 | 1223-1232 |
| Ex. B - Michigan State Police Notice to Register | 05/26/2022 | 39-2 | 1233-1238 |
| Ex. C - Comparative Chart (Amended SORA and SORNA) | 05/26/2022 | 39-3 | 1239-1299 |
| Defendants' Motion to Dismiss | 05/31/2022 | 41 | 1308-1383 |
| Index of Exhibits | 05/31/2022 | 41-1 | 1384 |
| Ex. A - Comparison Chart | 05/31/2022 | 41-2 | 1385-1389 |
| Plaintiffs' Reply Brief in Support of Motion for Preliminary Injunction | 07/18/2022 | 43 | 1444-1465 |
| Ex. 1 - Dr. Kelly M. Socia Supplemental Report | 07/18/2022 | 43-1 | 1466-1509 |
| Plaintiffs' Response to Defendants' Motion to Dismiss | 07/18/2022 | 44 | 1510-1597 |
| Ex. 1 - Timothy Poxson Declaration | 07/18/2022 | 44-1 | 1598-1608 |
| Defendants' Reply to Plaintiffs' Response to Motion to Dismiss | 07/29/2022 | 47 | 1615-1638 |

| | | | |
|---|---|---|---|
| Ex. A - Amicus Curiae Brief of the ACLU of Michigan in *Willman v. US Attorney General* | 07/29/2022 | 47-1 | 1639-1757 |
| Plaintiffs' Notice of Supplemental Authority | 08/12/2022 | 48 | 1758-1763 |
| Ex. 1 - *Koch v. Village of Heartland* | 08/12/2022 | 48-1 | 1764-1788 |
| Ex. 2 - *People v. Nunez* | 08/12/2022 | 48-2 | 1789-1801 |
| Order (1) Denying Without Prejudice Plaintiffs' Motion for Preliminary Injunction (Dkt. 7), and (2) Denying Without Prejudice Defendants' Motion to Dismiss (Dkt. 41) | 09/15/2022 | 54 | 1847-1852 |
| Defendants' Answer to Complaint | 09/28/2022 | 58 | 1858-2011 |
| Opinion Regarding Disclosure of Non-Public Data | 01/26/2023 | 83 | 2364-2366 |
| Second Amended Stipulated Protective Order | 03/01/2023 | 88 | 2389-2397 |
| Plaintiffs' Motion for Leave to Supplement Complaint | 03/29/2023 | 100 | 2542-2559 |
| Plaintiffs' Motion for Certification of "Non-Michigan Offense" Subclass | 03/29/2023 | 101 | 2721-2738 |
| Defendants' Response to Motion to Amend Complaint | 04/05/2023 | 103 | 2741-2749 |
| Plaintiffs' Reply Brief in Support of Their Motion for Leave to Supplement the Complaint | 04/07/2023 | 104 | 2750-2756 |
| Opinion & Order Granting Plaintiffs' Motion for Leave to Supplement Complaint (Dkt. 100) | 04/19/2023 | 107 | 2765-2768 |
| First Amended Verified Class Action Complaint | 04/21/2023 | 108 | 2769-2985 |
| Index of Exhibits | 04/21/2023 | 108-1 | 2986-2987 |
| Ex. 22 - Declarations of Mary Doe and John Doe G Verifying Complaint | 04/21/2023 | 108-2 | 2988-2990 |
| Ex. 23 – Michigan State Police Flowcharts for Registration of Non-Michigan Offenses | 04/21/2023 | 108-3 | 2991-2993 |

| | | | |
|---|---|---|---|
| Ex. 24 – Michigan State Police Emails Discussing Registration for Non-Michigan Convictions | 04/21/2023 | 108-4 | 2994-3032 |
| Ex. 25 – Narcisa Morris Deposition Transcript Excerpts | 04/21/2023 | 108-5 | 3033-3040 |
| Ex. 26 - PACC Code Table | 04/21/2023 | 108-6 | 3041-3072 |
| Ex. 27 - Mary Chartier Declaration | 04/21/2023 | 108-7 | 3073-3102 |
| Ex. 28 - SOR Operating Procedure 315 | 04/21/2023 | 108-8 | 3103-3118 |
| Ex. 29 - Tier Notification Letters | 04/21/2023 | 108-9 | 3119-3123 |
| Ex. 30 - Additional Excerpts from Narcisa Morris Deposition Transcript | 04/21/2023 | 108-10 | 3124-3126 |
| Stipulated Order to Certify Non-Michigan Offense Subclass | 05/09/2023 | 109 | 3127-3129 |
| Defendants' Answer to First Amended Verified Class Action Complaint and Affirmative Defenses | 05/19/2023 | 111 | 3132-3543 |
| Order Setting Schedule for Summary Judgment Motions | 09/01/2023 | 121 | 3598-3601 |
| Plaintiffs' Motion for Summary Judgment | 10/02/2023 | 123 | 3603-3693 |
| Plaintiffs' Statement of Material Facts | 10/02/2023 | 123-1 | 3694-3899 |
| Index of Exhibits | 10/02/2023 | 123-2 | 3900-3908 |
| Ex. 1 - Summary of SORA 2021's Obligations, Disabilities, and Restraints | 10/02/2023 | 123-3 | 3909-3925 |
| Ex. 2 - SORA 2021 with Highlighted Changes Showing 2011 and 2021 Amendments | 10/02/2023 | 123-4 | 3926-3945 |
| Ex. 3 - Chart of Michigan State Police Deposition Responses from Steve Beatty, Narcisa Morris, and Brenda Hoffman Showing SORA's Vagueness | 10/02/2023 | 123-5 | 3946-3949 |
| Ex. 4 - Expert Report on Class Data (German Alcala, James J. Prescott, & Karl Hanson) | 10/02/2023 | 123-6 | 3950-4003 |
| Ex. 5 - Dr. Karl Hanson Expert Report | 10/02/2023 | 123-7 | 4004-4174 |
| Ex. 6 - Dr. Karl Hanson Rebuttal Report | 10/02/2023 | 123-8 | 4175-4214 |
| Ex. 7 - Dr. Elizabeth Letourneau Expert Report | 10/02/2023 | 123-9 | 4215-4272 |

| | | | |
|---|---|---|---|
| Ex. 8 - Dr. James J. Prescott Expert Report | 10/02/2023 | 123-10 | 4273-4323 |
| Ex. 9A - Dr. Kelly Socia Expert Report | 10/02/2023 | 123-11 | 4324-4378 |
| Ex. 9B - Dr. Kelly Socia Supplemental Declaration Rebutting Research Cited by Defendants | 10/02/2023 | 123-12 | 4379-4421 |
| Ex. 10 - Dr. Kelly Socia Rebuttal Report | 10/02/2023 | 123-13 | 4422-4481 |
| Ex. 11 - Dr. Sarah Lageson Expert Report | 10/02/2023 | 123-14 | 4482-4558 |
| Ex. 12 - Dr. Kristen Zgoba Expert Report | 10/02/2023 | 123-15 | 4559-4573 |
| Ex. 13 - Dr. John Ulrich Expert Report | 10/02/2023 | 123-16 | 4574-4598 |
| Ex. 14 - Sujatha Baliga Expert Report | 10/02/2023 | 123-17 | 4599-4625 |
| Ex. 15 - Amended Expert Report of Barbara R. Levine | 10/02/2023 | 123-18 | 4626-4675 |
| Ex. 16 - Anne Yantus Expert Report | 10/02/2023 | 123-19 | 4676-4684 |
| Ex. 17 - Richard Stapleton Expert Report | 10/02/2023 | 123-20 | 4685-4703 |
| Ex. 18 - Mary Chartier Expert Report | 10/02/2023 | 123-21 | 4704-4732 |
| Ex. 19 - James Schaafsma Expert Report | 10/02/2023 | 123-22 | 4733-4737 |
| Ex. 20 - Giancarlo Guzman Declaration/Law Enforcement Survey | 10/02/2023 | 123-23 | 4738-4759 |
| Ex. 21 - Shelli Weisberg Declaration | 10/02/2023 | 123-24 | 4760-4787 |
| Ex. 22 - Hon. William C. Buhl Declaration | 10/02/2023 | 123-25 | 4788-4796 |
| Ex. 23 - Senator Jeffrey Irwin Declaration | 10/02/2023 | 123-26 | 4797-4801 |
| Ex. 24 - Mariam Elbakr Declaration | 10/02/2023 | 123-27 | 4802-4809 |
| Ex. 25 - I.G. Declaration | 10/02/2023 | 123-28 | 4810-4812 |
| Ex. 26 - B.W. Declaration | 10/02/2023 | 124 | 4813-4818 |
| Ex. 27 - A.C. Declaration | 10/02/2023 | 124-1 | 4819-4825 |
| Ex. 28 - W.C. Declaration | 10/02/2023 | 124-2 | 4826-4831 |
| Ex. 29 - P.F. Declaration | 10/02/2023 | 124-3 | 4832-4835 |
| Ex. 30 - R.H. Declaration | 10/02/2023 | 124-4 | 4836-4841 |
| Ex. 31 - R.H.2 Declaration | 10/02/2023 | 124-5 | 4842-4849 |
| Ex. 32 - A.J. Declaration | 10/02/2023 | 124-6 | 4850-4854 |
| Ex. 33 - D.K. Declaration | 10/02/2023 | 124-7 | 4855-4859 |
| Ex. 34 - R.L. Declaration | 10/02/2023 | 124-8 | 4860-4863 |
| Ex. 35 - H.M. Declaration | 10/02/2023 | 124-9 | 4864-4873 |
| Ex. 36 - D.M. Declaration | 10/02/2023 | 124-10 | 4874-4878 |

| | | | |
|---|---|---|---|
| Ex. 37 - J.M. Declaration | 10/02/2023 | 124-11 | 4879-4882 |
| Ex. 38 - K.M. Declaration | 10/02/2023 | 124-12 | 4883-4888 |
| Ex. 39 - K.N. Declaration | 10/02/2023 | 124-13 | 4889-4893 |
| Ex. 40 - G.O. Declaration | 10/02/2023 | 124-14 | 4894-4897 |
| Ex. 41 - T.P. Declaration | 10/02/2023 | 124-15 | 4898-4901 |
| Ex. 42 - B.P. Declaration | 10/02/2023 | 124-16 | 4902-4906 |
| Ex. 43 - M.R. Declaration | 10/02/2023 | 124-17 | 4907-4915 |
| Ex. 44 - T.R. Declaration | 10/02/2023 | 124-18 | 4916-4923 |
| Ex. 45 - J.S. Declaration | 10/02/2023 | 124-19 | 4924-4928 |
| Ex. 46 - A.S. Declaration | 10/02/2023 | 124-20 | 4929-4932 |
| Ex. 47 - K.S. Declaration | 10/02/2023 | 124-21 | 4933-4936 |
| Ex. 48 - E.S. Declaration | 10/02/2023 | 124-22 | 4937-4944 |
| Ex. 49 - G.W. Declaration | 10/02/2023 | 124-23 | 4945-4949 |
| Ex. 50 - K.W. Declaration | 10/02/2023 | 124-24 | 4950-4955 |
| Ex. 51 – Declaration of John Doe E's Nephew | 10/02/2023 | 125 | 4956-4958 |
| Ex. 52 - Transcript of MSOR Training with Hernandez Declaration | 10/02/2023 | 125-1 | 4959-5003 |
| Ex. 53 - Named Plaintiffs' Declarations Verifying Complaint | 10/02/2023 | 125-2 | 5004-5016 |
| Ex. 54 - Dr. Karl Hanson Deposition Transcript | 10/02/2023 | 125-3 | 5017-5078 |
| Ex. 55 – Dr. Elizabeth Letourneau Deposition Transcript | 10/02/2023 | 125-4 | 5079-5102 |
| Ex. 56 - John Doe B Deposition Transcript | 10/02/2023 | 125-5 | 5103-5122 |
| Ex. 57 – John Doe C Deposition Transcript | 10/02/2023 | 125-6 | 5123-5139 |
| Ex. 58 - John Doe D Deposition Transcript | 10/02/2023 | 125-7 | 5140-5157 |
| Ex. 59 - John Doe F Deposition Transcript | 10/02/2023 | 125-8 | 5158-5181 |
| Ex. 60 - John Doe G Deposition Transcript | 10/02/2023 | 125-9 | 5182-5203 |
| Ex. 61 - Mary Doe Deposition Transcript | 10/02/2023 | 125-10 | 5204-5227 |
| Ex. 62 - Mary Roe Deposition Transcript | 10/02/2023 | 125-11 | 5228-5249 |
| Ex. 63 - A.C.  Deposition Transcript | 10/02/2023 | 125-12 | 5250-5273 |
| Ex. 64 - A.J. Deposition Transcript | 10/02/2023 | 125-13 | 5274-5297 |
| Ex. 65 - K.S. Deposition Transcript | 10/02/2023 | 125-14 | 5298-5335 |

| | | | |
|---|---|---|---|
| Ex. 66 - M.R. Deposition Transcript | 10/02/2023 | 125-15 | 5336-5356 |
| Ex. 67 - Dr. Rachel Lovell Deposition Transcript | 10/02/2023 | 125-16 | 5357-5419 |
| Ex. 68 - Dr. Rachael Goodman-Williams Deposition Transcript | 10/02/2023 | 125-17 | 5420-5461 |
| Ex. 69 - Dr. Anna Salter Deposition Transcript | 10/02/2023 | 125-18 | 5462-5541 |
| Ex. 69A- 69H - Salter Deposition Exhibits | 10/02/2023 | 125-19 to 125-26 | 5542-5660 |
| Ex. 70 - Dr. Darrel Turner Deposition Transcript | 10/02/2023 | 126 | 5661-5706 |
| Ex. 71 - Steven Beatty Deposition Transcript and Deposition Exs. 30-32 | 10/02/2023 | 126-1 | 5707-5794 |
| Ex. 72 - Timothy Fitzgerald Deposition Transcript | 10/02/2023 | 126-2 | 5795-5814 |
| Ex. 73 - Brenda Hoffman Deposition Transcript and Deposition Exs. F and G | 10/02/2023 | 126-3 | 5815-5858 |
| Ex. 74 - Sharon Jegla Deposition Transcript and Deposition Exs. S and T | 10/02/2023 | 126-4 | 5859-5912 |
| Ex. 75 - James Kissinger Deposition Transcript | 10/02/2023 | 126-5 | 5913-5936 |
| Ex. 76 - Jami Selden-Manor Deposition Transcript | 10/02/2023 | 126-6 | 5937-5983 |
| Ex. 77 - Nicole McGhee Deposition Transcript | 10/02/2023 | 126-7 | 5984-5999 |
| Ex. 78 - Narcisa Morris Deposition Transcript and Ex. 7 | 10/02/2023 | 126-8 | 6000-6066 |
| Ex. 79 - Corey Spickler Deposition Transcript | 10/02/2023 | 126-9 | 6067-6080 |
| Ex. 80 - Defendants' Amended Responses to Plaintiffs' 1st Interrogatories | 10/02/2023 | 126-10 | 6081-6094 |
| Ex. 81 - Defendants' Amended Response to Plaintiffs' 1st Request for Production | 10/02/2023 | 126-11 | 6095-6122 |
| Ex. 82 - Plaintiffs' 1st Request to Admit and Defendants' Responses | 10/02/2023 | 126-12 | 6123-6157 |
| Ex. 83 - Defendants' Response to Plaintiffs' 2nd Request to Admit | 10/02/2023 | 126-13 | 6158-6161 |

| Ex. 84 - Plaintiffs' Response to Defendants' 2nd Interrogatories | 10/02/2023 | 126-14 | 6162-6175 |
|---|---|---|---|
| Ex. 85 - Plaintiffs' Response to Defendants' 3rd Interrogatories | 10/02/2023 | 126-15 | 6176-6193 |
| Ex. 86 – Michigan State Police Letter to Registrants re SORA | 10/02/2023 | 126-16 | 6194-6202 |
| Ex. 87 – Michigan SOR Verification Update Form | 10/02/2023 | 126-17 | 6203-6208 |
| Ex. 88 - Michigan SOR Mail-In Update Form | 10/02/2023 | 126-18 | 6209-6212 |
| Ex. 89 – Pre 2021 Explanation of Duties | 10/02/2023 | 126-19 | 6213-6215 |
| Ex. 90 – Michigan State Police SOR Registration Enforcement Manual | 10/02/2023 | 126-20 | 6216-6223 |
| Ex. 91 - Contract for MSOR Database | 10/02/2023 | 126-21 | 6224-6325 |
| Ex. 92 - MSOR System Interfaces | 10/02/2023 | 126-22 | 6326-6328 |
| Ex. 93 – Michigan State Police Organizational Charts | 10/02/2023 | 126-23 | 6329-6332 |
| Ex. 94 – Michigan State Police Emails Discussing Registration for Non-Michigan Convictions | 10/02/2023 | 126-24 | 6333-6375 |
| Ex. 95 - MSOR User Guide | 10/02/2023 | 126-25 | 6376-6455 |
| Ex. 96 - MSOR Field Charts | 10/02/2023 | 127 | 6456-6469 |
| Ex. 97 – Prosecuting Attorneys Coordinating Council Code Chart | 10/02/2023 | 127-1 | 6470-6502 |
| Ex. 98 - SOR Operational Procedure 302 Public SOR Website | 10/02/2023 | 127-2 | 6503-6504 |
| Ex. 99 - SOR Operational Procedure 303 Certified SOR Records | 10/02/2023 | 127-3 | 6505-6508 |
| Ex. 100 - SOR Operational Procedure 304 Tracking Absconders | 10/02/2023 | 127-4 | 6509-6512 |
| Ex. 101 - SOR Operational Procedure 307 Registration | 10/02/2023 | 127-5 | 6513-6516 |
| Ex. 102 - SOR Operational Procedure 308, Offender Duration Has Ended | 10/02/2023 | 127-6 | 6517-6520 |
| Ex. 103 - SOR Operational Procedure 310, Sweep Packets, and Sex Offender Sweep Findings Form | 10/02/2023 | 127-7 | 6521-6524 |
| Ex. 104 - SOR Operational Procedure 313, Court Orders | 10/02/2023 | 127-8 | 6525-6528 |

71

| | | | |
|---|---|---|---|
| Ex. 105 - SOR Operational Procedure 315: Pending Review | 10/02/2023 | 127-9 | 6529-6544 |
| Ex. 106 - MSP Flowcharts for Registration of Non-Michigan Offenses | 10/02/2023 | 127-10 | 6545-6547 |
| Ex. 107 - SOR Operational Procedure 319, LEIN Inquiries | 10/02/2023 | 127-11 | 6548-6551 |
| Ex. 108 - SOR Operational Procedure 322, Pending Arrival | 10/02/2023 | 127-12 | 6552-6555 |
| Ex. 109 - SOR Operational Procedure 328, International Travel | 10/02/2023 | 127-13 | 6556-6558 |
| Ex. 110 - SOR Policy 304, National Sex Offender Registry Participation | 10/02/2023 | 127-14 | 6559-6560 |
| Ex. 111 - SORNA Implementation Letter | 10/02/2023 | 127-15 | 6561-6563 |
| Ex. 112 - SOR Backgrounder | 10/02/2023 | 127-16 | 6564-6569 |
| Ex. 113 - Tier Audit Letters | 10/02/2023 | 127-17 | 6570-6574 |
| Ex. 114 - Morris Grant Email and Grant Applications (selected pages) | 10/02/2023 | 127-18 | 6575-6580 |
| Ex. 115 - Chart of Registration Offenses, Violations and Penalties | 10/02/2023 | 127-19 | 6581-6583 |
| Ex. 116 - Grant Report | 10/02/2023 | 127-20 | 6584-6590 |
| Ex. 117 - Notification of International Travel of Sex Offender Form | 10/02/2023 | 127-21 | 6591-6593 |
| Ex. 118 – Michigan State Police Offense Cheat Sheet | 10/02/2023 | 127-22 | 6594-6596 |
| Ex. 119 - Michigan Crime Codes for Registration | 10/02/2023 | 127-23 | 6597-6601 |
| Ex. 120 - Screenshots of Online Registry | 10/02/2023 | 127-24 | 6602-6612 |
| Ex. 121 - SORA FAQ from Online Website | 10/02/2023 | 128 | 6613-6628 |
| Ex. 122 - Michigan Attorney General Comments on H.B.5679 | 10/02/2023 | 128-1 | 6629-6633 |
| Ex. 123 – Michigan State Police Comments on H.B. 5679 | 10/02/2023 | 128-2 | 6634-6636 |
| Ex. 124 - House Judiciary Committee Summary of H.B. 5679 as Passed by House, 100th Leg., Reg. Sess. (Mich. 2020) | 10/02/2023 | 128-3 | 6637-6646 |
| Ex. 125 - Judgment of Sentence Form CC 219b | 10/02/2023 | 128-4 | 6647-6649 |

| Ex. 126 - Petition to Discontinue Sex Offender Registration, Form MC 406a | 10/02/2023 | 128-5 | 6650-6652 |
|---|---|---|---|
| Ex. 127 - Order on Petition to Discontinue Sex Offender Registration, Form MC 406b | 10/02/2023 | 128-6 | 6653-6654 |
| Ex. 128 - *Lymon* Prosecutor Letter | 10/02/2023 | 128-7 | 6655-6656 |
| Ex. 129 - *Lymon* Law Enforcement Letter | 10/02/2023 | 128-8 | 6657-6658 |
| Ex. 130 - *Lymon* Court Letter | 10/02/2023 | 128-9 | 6659-6660 |
| Ex. 131 - *Lymon* Registrant Letter | 10/02/2023 | 128-10 | 6661-6662 |
| Ex. 132 - Procedure for *Lymon* Removals | 10/02/2023 | 128-11 | 6663-6667 |
| Ex. 133 - *Lymon* Calls Cheat Sheet | 10/02/2023 | 128-12 | 6668-6669 |
| Ex. 134 – Michigan Department of Corrections Operating Procedure 05.01.100 | 10/02/2023 | 128-13 | 6670-6689 |
| Ex. 135 - Static-99R Coding Sheet | 10/02/2023 | 128-14 | 6690-6692 |
| Ex. 136 - *Does I* Joint Statement of Facts, No. 2:12-cv-11194, R. 90 | 10/02/2023 | 128-15 | 6693-6962 |
| Ex. 137 - *Does I* Stipulated Final Judgment, No. 2:12-cv-11194, R. 153 | 10/02/2023 | 128-16 | 6963-6968 |
| Ex. 138 – Timothy Poxson Declaration, *Does II*, No. 16-cv-13137, R. 115-1 | 10/02/2023 | 128-17 | 6969-6977 |
| Ex. 139 - Sample Probation Order | 10/02/2023 | 128-18 | 6978-6981 |
| Ex. 140 - Dr. Rachel Lovell Declaration | 10/02/2023 | 128-19 | 6982-7011 |
| Ex. 141 - Dr. Rachael Goodman-Williams Declaration | 10/02/2023 | 128-20 | 7012-7050 |
| Ex. 142 - Dr. Anna Salter Declaration | 10/02/2023 | 128-21 | 7051-7078 |
| Ex. 143 - Dr. Darryl Turner Declaration | 10/02/2023 | 128-22 | 7079-7103 |
| Ex. 144 - Shawn Starkey Declaration | 10/02/2023 | 128-23 | 7104-7105 |
| Ex. 145 - Jami Selden-Manor Declaration | 10/02/2023 | 128-24 | 7106-7111 |
| Defendants' Motion for Summary Judgment | 11/21/2023 | 129 | 7112-7204 |
| Defendants' Statement of Facts | 11/21/2023 | 129-1 | 7205-7229 |
| Defendants' Response to Plaintiffs' Statement of Material Facts | 11/21/2023 | 129-2 | 7230-7568 |
| Index of Exhibits | 11/21/2023 | 129-3 | 7569 |
| Ex. A - Tricia Dare Affidavit | 11/21/2023 | 129-4 | 7570-7574 |
| Ex. B – Danielle Bennetts Declaration | 11/21/2023 | 129-5 | 7575-7582 |

| | | | |
|---|---|---|---|
| Ex. C – Sharon Jegla Second Affidavit | 11/21/2023 | 129-6 | 7583-7586 |
| Ex. D - MSP Notice to Law Enforcement re *Does I* | 11/21/2023 | 129-7 | 7587-7589 |
| Ex. E - SORA Sweeps | 11/21/2023 | 129-8 | 7590-7594 |
| Ex. F – Kyle Kaminski Affidavit | 11/21/2023 | 129-9 | 7595-7600 |
| Ex. G - Summary of Various Offenses | 11/21/2023 | 129-10 | 7601-7648 |
| Ex. H - M.R. Affidavit and Plea | 11/21/2023 | 129-11 | 7649-7672 |
| Ex. I - NWD Complaint and Affidavit | 11/21/2023 | 129-12 | 7673-7680 |
| Ex. J - NED Sentencing Memo | 11/21/2023 | 129-13 | 7681-7690 |
| Ex. K - Sharon Jegla Affidavit | 11/21/2023 | 129-14 | 7691-7693 |
| Ex. L – Sarah Prout Declaration | 11/21/2023 | 129-15 | 7694-7711 |
| Ex. M - NWD Probation Conditions | 11/21/2023 | 129-16 | 7712-7718 |
| Ex. N - Probation and Parole Conditions | 11/21/2023 | 129-17 | 7719-7751 |
| Ex. O - Jami Selden-Manor Declaration | 11/21/2023 | 129-18 | 7752-7755 |
| Ex. P - Correspondence from Prosecutors | 11/21/2023 | 130 | 7756-7916 |
| Ex. Q - Prosecuting Attorneys Coordinating Council Warrant Manual Changes | 11/21/2023 | 130-1 | 7917-7922 |
| Ex. R - Legislative Analysis of HB 5679 | 11/21/2023 | 130-2 | 7923-7932 |
| Plaintiffs' Reply Brief in Support of Their Motion for Summary Judgment and Response Brief in Opposition to Defendants' Motion for Summary Judgment | 12/28/2023 | 131 | 7933-7976 |
| Plaintiffs' Response to Defendants' Statement of Facts | 12/28/2023 | 131-1 | 7977-8036 |
| Updated Index of Exhibits | 12/28/2023 | 131-2 | 8037-8045 |
| Ex. 14 - Sujatha Baliga Expert Report (corrected) | 12/28/2023 | 131-3 | 8046-8072 |
| Ex. 146 - American Law Institute, Model Penal Code, Sexual Assault and Related Offenses, Section 213.11 | 12/28/2023 | 131-4 | 8073-8243 |
| Ex. 147 - Dylan Scott, *States Find SORNA Non-Compliance Cheaper* | 12/28/2023 | 131-5 | 8244-8247 |
| Ex. 148 - The National Conference of State Legislatures, *Cost-Benefit Analysis of SORNA Implementation* | 12/28/2023 | 131-6 | 8248-8250 |
| Ex. 149 - Harris et al., *Widening the Net: The Effects of Transitioning to Adam* | 12/28/2023 | 131-7 | 8251-8269 |

| *Walsh Act's Federally Mandated Sex Offender Classification Scheme* | | | |
|---|---|---|---|
| Ex. 150 - SORNA Substantial Implementation Review State of Michigan | 12/28/2023 | 131-8 | 8270-8276 |
| Ex. 151 - Letters from SMART Office re Substantial Implementation of SORNA | 12/28/2023 | 131-9 | 8277-8281 |
| Ex. 152 - Comparison Chart of SORA, Probation, and Parole | 12/28/2023 | 131-10 | 8282-8287 |
| Ex. 153 - Michigan State Police Enforcement Memo | 12/28/2023 | 131-11 | 8288-8289 |
| Ex. 154 - Defendants' Lay Witness Declarations with Inadmissible Statements Highlighted | 12/28/2023 | 131-12 | 8290-8319 |
| Defendants' Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment | 01/16/2024 | 132 | 8350-8371 |
| Parties' Joint Summary of Arguments from Cross-Motions for Summary Judgment | 01/23/2024 | 133 | 8372-8394 |
| Motion For Leave to File Amicus Curiae Brief by Law Professors William Araiza, Eric Janus, and Sandra Mayson in Support of Plaintiffs' Equal Protection and Substantive Due Process Claims, and Amicus Curiae Brief | 02/01/2024 | 136, 136-1 | 8401-8437 |
| Motion For Leave to File Brief of Law Professors as Amici Curiae in Support of Plaintiffs' Ex Post Facto Claim, and Amicus Curiae Brief | 02/02/2024 | 138, 138-1 | 8440-8473 |
| Motion for Leave to File Brief of Amici Curiae by 12 Scholars, and Amicus Curiae Brief | 02/06/2024 | 139, 139-1 | 8474-8525 |
| Plaintiffs' Notice of Supplemental Authority | 03/24/2024 | 144 | 8563-8566 |
| Ex. A - Supreme Court opinion in *FBI v. Fikre*, 601 U.S. ___ (2024). | 03/24/2024 | 144-1 | 8567-8580 |
| Defendants' Supplemental Brief re *Doe v. Lee* | 05/24/2024 | 145 | 8581-8591 |

| | | | |
|---|---|---|---|
| Plaintiffs' Supplemental Brief re *Doe v. Lee* | 05/28/2024 | 146 | 8592-8601 |
| Index of Exhibits | 05/28/2024 | 146-1 | 8602 |
| Ex. A - *Does I* Stipulated Final Judgment on Remand | 05/28/2024 | 146-2 | 8603-8608 |
| Ex. B - *Does II* Amended Final Judgment | 05/28/2024 | 146-3 | 8609-8619 |
| Ex. C - Email from Defense Counsel to Michigan Prosecuting Attorneys Coordinating Council in *Does II* Recognizing that Prosecutors are Bound by an Injunction Against the Governor | 05/28/2024 | 146-4 | 8620-8623 |
| Defendants' Brief in Response to the Amicus Briefs Filed by the Scholars of Criminal Justice, Professors Araiza, Janus, And Mayson, And Professors Berman, Edmonds, Simon, Starr, Yung, And Logan | 07/25/2024 | 152 | 8632-8636 |
| Defendants' Supplemental Brief re: *People v. Lymon* | 08/06/2024 | 154 | 8638-8644 |
| Plaintiffs' Supplemental Brief re: *People v. Lymon* | 08/06/2024 | 155 | 8645-8652 |
| Ex. A - Email Correspondence between Miriam Aukerman and Scott Damich | 08/06/2024 | 155-1 | 8653-8656 |
| Opinion And Order (1) Granting in Part Plaintiffs' Motion for Summary Judgment (Dkt. 123) And (2) Granting in Part Defendants' Motion For Summary Judgment (Dkt. 129) | 09/27/2024 | 158 | 8662-8776 |
| Joint Statement | 11/01/2024 | 159 | 8777-8792 |
| Ex. A - Draft Proposed Judgment | 11/01/2024 | 159-1 | 8793-8817 |
| Defendants' Supplemental Briefing Related to Vagueness Challenges | 11/27/2024 | 162 | 8820-8844 |
| Ex. A - Defendants' Proposed Judgment on Count VIII (Vagueness) | 11/27/2024 | 162-1 | 8845-8858 |
| Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion for Summary Judgment on Count VIII (Vagueness) | 11/27/2024 | 163 | 8859-8889 |
| Ex. A - Plaintiffs' Proposed Judgment | 11/27/2024 | 163-1 | 8890-8903 |

| Supplemental Joint Statement on Remedy | 12/11/2024 | 164 | 8904-8936 |
|---|---|---|---|
| Ex. A - Plaintiffs' Draft Proposed Judgment | 12/11/2024 | 164-1 | 8937-8983 |
| Plaintiffs' Motion for Entry of Judgment | 01/10/2025 | 167 | 8986-9029 |
| Ex. A - Plaintiffs' Draft Proposed Judgment | 01/20/2025 | 167-1 | 9030-9086 |
| Defendant's Response to Motion for Entry of Judgment | 01/23/2025 | 168 | 9087-9127 |
| Ex. A - Defendants' Draft Proposed Judgment | 01/23/2025 | 168-1 | 9128-9155 |
| Opinion & Order Granting in Part and Denying in Part Plaintiffs' Motion for Judgment (Dkt. 167) | 03/26/2025 | 171 | 9159-9182 |
| Judgment | 03/26/2025 | 172 | 9183-9197 |
| Defendants' Motion to Stay Judgment on Counts I, II, and XI Pending Appeal – Expedited Consideration Requested | 04/11/2025 | 173 | 9198-9228 |
| Index of Exhibits | 04/11/2025 | 173-1 | 9229 |
| Ex. A - Comparative Chart Michigan 2021 SORA and Federal SORNA | 04/11/2025 | 173-2 | 9230-9291 |
| Ex. B - Amicus Curiae Brief of the ACLU of Michigan in *Willman v. Attorney General of United States*. | 04/11/2025 | 173-3 | 9292-9328 |
| Joint Motion to Correct Technical Errors in Final Judgment [ECF 172] and Enter Amended Final Judgment | 04/16/2025 | 174 | 9329-9338 |
| Plaintiffs' Response in Opposition To Defendants' Motion for Stay | 04/21/2025 | 175 | 9339-9368 |
| Ex. A - Declaration of German Marquez Alcala | 04/21/2025 | 175-1 | 9369-9375 |
| Order Granting Joint Motion to Correct Technical Errors in Final Judgment (Dkt. 174) | 04/22/2025 | 176 | 9376 |
| Amended Final Judgment | 04/22/2025 | 177 | 9377-9392 |
| Defendants' Reply Brief to Plaintiffs' Response to Motion to Stay Judgment on Counts I, II, and XI Pending Appeal | 04/23/2025 | 179 | 9394-9403 |

| | | | |
|---|---|---|---|
| Defendants' Notice of Appeal | 04/23/2025 | 180 | 9404 |
| Plaintiffs' Notice of Appeal | 04/23/2025 | 181 | 9405-9406 |
| Defendants' Amended Notice of Appeal | 04/24/2025 | 184 | 9409 |
| Defendants' Supplemental Brief in Support of Its Motion to Stay Judgment on Counts I, II, and XI Pending Appeal | 05/05/2025 | 188 | 9414-9423 |
| Plaintiffs' Supplemental Brief in Opposition to Defendants' Motion for Stay | 05/05/2025 | 189 | 9424-9446 |
| Index of Exhibits | 05/05/2025 | 189-1 | 9447 |
| Ex. 2 - Brief of Amicus Curiae Michigan State Police in *People v. Kardasz* | 05/05/2025 | 189-3 | 9456-9461 |
| Ex. 1 - Second Declaration of Giancarlo Guzman (corrected) | 05/06/2025 | 190 | 9462-9489 |
| Opinion & Order Denying Defendants' Motion to Stay Judgment (Dkt. 173) | 05/19/2025 | 192 | 9491-9504 |
| Parties' Joint and Separate Statements Regarding Notice Process and Notices to Registrants, Law Enforcement, and Prosecutors | 05/20/2025 | 193 | 9505-9517 |
| Index of Exhibits | 05/20/2025 | 193-1 | 9518 |
| Ex. A - Proposed Notice Process Order | 05/20/2025 | 193-2 | 9519-9528 |
| Ex. A1 - Proposed Registrant Notice | 05/20/2025 | 193-3 | 9529-9544 |
| Ex. A2 - Proposed Prosecutor Explanation | 05/20/2025 | 193-4 | 9545-9547 |
| Ex. A3 - Proposed Law Enforcement Explanation | 05/20/2025 | 193-5 | 9548-9550 |
| Sixth Circuit Order Staying Judgment | 06/24/2025 | 197 | 9554-9560 |

**ADDENDUM**

Transcript of Oral Argument
in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016) (Excerpted
and Highlighted)

CASE NO. 15-2346/2486

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

JOHN DOES #1-5; MARY DOE
*Plaintiffs-Appellants/Cross-Appellees,*

-vs-

RICHARD SNYDER, Governor of the State of Michigan; COL. KRISTE ETUE,
Director of the Michigan State Police, in their official capacities,
*Defendants-Appellees/Cross-Appellants.*

**On appeal from the United States District Court
for the Eastern District of Michigan**

ARGUMENT HEARD WEDNESDAY, APRIL 27, 2016
(Judges Batchelder, Donald, and Merritt)

EXCERPT STARTING AT MINUTE 28.00

**28:00-28:46. Ms. Aukerman (Plaintiffs' counsel):**  I want to address your question about the relationship between vagueness and the Ex Post Facto Clause …uh, issue. If this Court rules for the Plaintiffs on ex post facto, that does not resolve the vagueness issue….

…[T]here are registrants today who are going to be faced with that same vagueness problem, right, who are convicted today, put on the registry today, who would not be affected by the ex post facto ruling but are going to face that same issue, so I believe the Court has to address that as well.

**28:46-29:22. Judge Merritt:**  I'm following that you are making a distinction here, if this Court says that the Michigan, umm, statute is punitive and therefore is a ex post facto law, and it seems to me that that would take down with it the provisions of the law that are also vague.

80

**29:22-30:05. Ms. Aukerman:** What it would do is for the individuals who were previously convicted, the statute could not be applied retroactively to those individuals. It could still be applied prospectively because the State can prospectively punish….

\*   \*   \*   \*   \*   \*

**30:57- 31:41. Judge Merritt:** What you are asking us to do is to decide what in the future would be void for vagueness and because if it is an ex post facto law that takes the statute down, it declares it to be now invalid, but doesn't say anything about what in the future might or might not be void for vagueness or ex post facto. I guess if a new statute is adopted then it will raise its own problems. We'll have to decide that then. That's my only question.

**31:41-32:10. Judge Batchelder:** Let me ask it in a slightly different way .… If I could. If we were to decide that the ex post facto challenge here is meritorious, that gets rid of all of these Plaintiffs who have raised that, that question. And if, if that is so, who is before us as to whom we could decide a vagueness challenge?

\*   \*   \*   \*   \*   \*

**32:46- 33:18 Judge Batchelder:** What I'm worrying about is, I mean I hear you, I understand what you're saying but, for every single one of the Plaintiffs that we have in front of us, if we say this law is, runs afoul of the Ex Post Facto Clause, then any other reason that we would say this law can't be applied, whether we're looking at it facially or as applied, is really kind of dicta, is it not? Because we're getting rid of it on the basis of ex post facto.

# DECLARATION OF ELVIRA HERNANDEZ

In accordance with 28 U.S.C. § 1746, I, Elvira Hernandez, make the following declaration:

1. I have worked as a legal assistant for over 27 years. During that time, attorneys with whom I have worked dictated letters, documents, and time entries, and I transcribed them. I am familiar with the process of providing accurate transcriptions.

2. I was provided with an audio recording of a Sixth Circuit argument held on April 27, 2016, in *Does v Snyder*, Case No. 15-2346. This audio recording is available on the Sixth Circuit's website.

3. I began transcribing the recording at minute 28:00, and transcribed until the end of the audio recording at minute 35:01. I declare that I accurately transcribed the recording to the best of my ability. I have a copy of that transcript for anyone who wishes to see it.

4. Plaintiffs' counsel excerpted the transcript I prepared to provide the Court with the lines relevant to the present appeal. Counsel also identified which judges of the panel were speaking, as counsel were present at the argument.

5. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Dated: June 4, 2023

_Elvira Hernandez_
Elvira Hernandez
Program Associate
American Civil Liberties Union
Fund of Michigan

82